Nat H. Hentbl, J.
The question sought to be raised by plaintiff’s pleadings and brief is whether a 93-year-old New York Court of Appeals holding in Rathbun v. Citizens’ Steamboat Co. *56 (76 N. T. 376), decided in 1879, is still controlling in today’s changing times in a current case involving analogous facts.
The stipulated facts in this nonjury case are:
1. Plaintiff consignor delivered certain merchandise to defendant common carrier on January 10,1972, for delivery to Island Merchandise Co., in Florida.
2. Defendant accepted the merchandise under a bill of lading requiring it to accept ‘ ‘ C.O.D. only as per the attached invoice for $855.00. ”
3. On January 17, 1972, defendant advised plaintiff that consignee refused to accept delivery and pay the C. O. D. charges.
4. On January 25, 1972, plaintiff, by airmail special delivery letter to the defendant, forwarded a corrected bill of lading stating that ‘ ‘ customer [consignee] check to shipper [plaintiff] will be acceptable. ”
5. On February 4, 1972, defendant delivered the merchandise to consignee and accepted personal check No. 123, dated February 25,1972, payable to plaintiff for $855 drawn on the Florida First National Bank, Belleglade, Florida, signed by one Adnan S. Faddah.
6. On February 14, 1972, defendant transmitted the “postdated check ’ ’ to plaintiff noting in its transmittal memorandum that it was dated February 25,1972.
7. Plaintiff held the check until February 25, 1972, and then deposited it for collection. Payment was refused for “ insufficient funds.”
Plaintiff argues in its brief that defendant breached the contract of carriage since it was only authorized to accept a check and not a postdated check. Section 3-104 (subds. [1], [2]) of the Uniform Commerical Code defines a writing as a check if it is a draft drawn on a bank and is payable on demand.
Defendant’s brief argues in return that under all applicable rules and regulations governing national motor freightage, a carrier only accepts checks as the agent of the consignor and its responsibility is limited merely to forwarding diligently such checks to consignor. However, defendant points out, plaintiff did accept the check from defendant and held it until the due date without protest, rejection or disclaimer. The first notice defendant received that plaintiff would seek recourse against it was after the check had been presented to the bank for payment and was refused. Defendant concludes that even if plaintiff is correct in its contention that defendant breached its contract in accepting a postdated check, plaintiff, nevertheless, is estopped from claiming damages for such breach since by accepting and *57 holding the check unconditionally, plaintiff ratified and forgave defendant’s allegedly wrongful act.
Query: Did the deposit by plaintiff of the check constitute a ratification of its agent’s breach, barring plaintiff from recovery?
The Bathbun case (76 N. Y. 376, supra) still appears to be the leading case in point. It held that an adoption and ratification of the carrier’s act estopped the shipper from asserting its claim against carrier.
The Bathbun case involved a shipper who authorized only O. 0. D. payment for goods delivered; and a carrier who accepted a demand check payable to consignor which the latter accepted without objection, disclaimer or rejection, and which was after-wards dishonored. The reasoning of the Bathbun case is not inapplicable here.
Plaintiff argues that present-day practices should not be inhibited by slavish adherence to the doctrine of an antique case and the law constantly should change to meet the needs of changing times. To bolster this argument, plaintiff asserts that Freedman & Slater v. Great Lakes Forwarding Corp. (7 A D 2d 978 [1st Dept., 1959]), although reluctantly following the Bathbun doctrine, indicated that the court would have been inclined to hold to the contrary on the theory that the shipper’s rights accrued against the carrier at the time of the breach (acceptance of the postdated check); and, “ consequently plaintiff had the right, even perháps the duty, to deposit the check ” and thus avoid possible damage before resorting to litigation. Plaintiff claims it had no choice here since it had no way of knowing the check would be dishonored and, therefore, as a practical matter, rather than interpose an immediate claim against the carrier, a claim which might have been unfounded because the instrument might have been valid on its due date, it took the check, held it and presented it for payment on its due date to minimize the possibility of damage. It was only upon dishonor that the carrier’s breach of contract matured into damage. The court in the Freedman case {supra, p. 979) said: “ If the present case were one of first impression we would be inclined to hold that the deposit by the plaintiff of the check did not constitute a ratification so as to deprive plaintiff of the right to recover against defendant for the latter’s breach of agreement. ” This is the question in this case.
Good try! But this court does not buy the plaintiff’s argument. The Bathbun doctrine still stands as a valid precedent in this case despite its venerable age; and this court sees no *58 necessity to change its applicability merely because of its age. It apparently is on all fours with this case when we quote its language as follows (76 N. Y. 376, 378, supra): “There is no dispute but that the defendant would have been liable if theplaintiifs had refused to accept the check, or had accepted it in a qualified manner but the question is whether the unconditional acceptance of the check did not amount to a waiver of the requirement to collect the money or a ratification of the act of receiving the check in lieu of money. ’ ’
If plaintiff had accepted the check in a qualified manner or had refused to accept the. check, carrier might have returned it, and procured the shipper’s money. But an unqualified acceptance gives carrier to understand that shipper has adopted its act.
In this case, the court does not consider the defendant’s act in taking a postdated check a breach of its contract of carriage. After all, what difference does it make to plaintiff whether it was a demand check which was dishonored upon presentation for payment or, as in this case, a postdated check? This is exactly the risk plaintiff solely assumed when it changed its “C. O. D. only ” instructions to carrier by authorizing receipt of consignee’s “ check.” In effect, it relinquished control over the shipped goods and chose to rely upon its customer’s credit as represented by the check, whether demand or postdated. The reliance is that the check is good when presented for payment. Plaintiff certainly was not relying on whether its carrier was going to make a proper choice in accepting a particular type of check from consignee. Plaintiff could easily have specified what kind of check it wanted its carrier agent to accept for security of payment. But, it did not! Unless it specified a certified or cashier’s check, this court cannot see any consequence of greater security for, or damage to, plaintiff as between a demand or postdated check. Both are equally dependent upon the customer’s credit, despite the Uniform Commercial Code definition of a check, supra; and upon the desire and ability of the maker to honor the presentation for payment. The mere fact that the check was postdated should not require carrier to indemnify shipper for the latter’s own act of mistaken reliance upon consignee’s credit.
Plaintiff figuratively made its bed and now it must sleep in it. It cannot prevail against defendant because the latter is more readily available as a defendant within the jurisdiction of this court, knowing full well that consignee is in Florida and the litigation problems which that entails. There is no breach of contract on the part of the defendant here. Even if there were, *59 the Rathbun doctrine (76 N. Y. 376, supra) would apply in view of plaintiff’s ratification of its collection agent’s act. Hence, complaint is dismissed. Judgment for the defendant accordingly.