133 N.J. Super. 543 (1975)
337 A.2d 641
SILVER CREATIONS, LTD., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
UNITED PARCEL SERVICE, A CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
April 17, 1975.
*546 Messrs. Sovel & Gruber, attorneys for plaintiff (Mr. Charles Sovel on the brief).
Messrs. Crummy, Del Deo, Dolan & Purcell, attorneys for defendant (Mr. David J. Sheehan on the brief).
DALTON, J.S.C.
This is an action initiated by a shipper, Silver Creations, Ltd., against United Parcel Service (UPS), a carrier for hire. The issues are whether the form of payment collected by defendant UPS upon delivery of plaintiff's goods to its consignee, Gotham Sales, was in conformity with the type of payment which it was authorized to receive and whether, by accepting the payment tendered, plaintiff waived any and all claims for breach against the carrier.
The facts are not in dispute, the parties having submitted a stipulated set of facts and legal briefs in lieu of trial.
Under the terms of the shipment contract defendant was required to collect either cash or check. Three deliveries are in dispute. In each delivery defendant collected a check, properly dated on its face, but containing instructions on the reverse side requesting that the check be deposited on a future date.
On the first delivery UPS collected a check from the consignee, Gotham Sales, in the amount of $1,203.30 dated May 16, 1973 on its face, with the written instructions, "Do not deposit until June 2, 1973" on the reverse side. Plaintiff accepted the check from defendant UPS on May 22, 1973 and held it until June 4, 1973, at which time plaintiff deposited it for collection.
*547 On the second delivery defendant collected a check for $602.15 dated May 23, 1973, with the instructions to hold until June 6. Defendant presented the check to plaintiff on May 30 and plaintiff did not deposit it until June 4.
The third check collected, also for $602.15, was dated May 24, 1973 and instructed plaintiff to hold it until June 8. Defendant presented the check to plaintiff on May 31 and plaintiff did not deposit the check until June 4.
The checks, subsequent to their deposit, were returned as uncollectible. Consequently, plaintiff has filed this action for breach of contract, contending that the instruments collected were not checks within the meaning of the Uniform Commercial Code. The complaint originally alleged that defendant had breached the contract by accepting checks which were post-dated.
This court had previously ruled, on a motion for summary judgment by defendant, that since the date on the faces of the checks were the same dates as their issuance, the checks were, as a matter of law, not post-dated. Plaintiff amended its complaint to state that the instructions on the backs of the checks make them conditional promises, thereby removing them from the definition of a check contained in Article 3 of the Uniform Commercial Code. Article 3 provides as follows:

12A:3-104. Form of Negotiable Instruments; "Draft"; "Check"; "Certificate of Deposit"; "Note".
(1) Any writing to be a negotiable instrument within this Chapter must
(a) be signed by the maker or drawer; and
(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Chapter; and
(c) be payable on demand or at a definite time; and
(d) be payable to order or to bearer.
(2) A writing which complies with the requirements of this section is
(a) a "draft" ("bill of exchange") if it is an order;
(b) a "check" if it is a draft drawn on a bank and payable on demand;

*548 (c) a "certificate of deposit" if it is an acknowledgment by a bank of receipt of money with an engagement to repay it;
(d) a "note" if it is a promise other than a certificate of deposit. [Emphasis added]
Plaintiff argues that the written instructions on the reverse side of the checks, limiting the time for deposit to a future date, preclude the instruments from being payable on demand as required by N.J.S.A. 12A:3-104(2)(b). However, to hold as plaintiff suggests would require a ruling that the requests as to the date of deposit were legally binding instructions which superseded the effect of the promise to pay on the face of the checks.
The effect, if any, of these written instructions appears to present an issue of first impression. Are these instructions mere requests to the plaintiff-payee, or do they have a binding legal effect which alters the express provisions on the face of the instrument? An analysis of various provisions of the Uniform Commercial Code, although not dispositive of the issue, indicates that such instructions have no legal effect.
These written instructions cannot be indorsements. N.J.S.A. 12A:3-202(2) states that "an indorsement must be written by or on behalf of the holder * * *." N.J.S.A. 12A:1-201(20) defines a "holder" as: "A person who is in possession of * * * an instrument * * * drawn, issued or indorsed to him or to his order or to bearer or in blank."
It is not disputed that these instruments were issued to plaintiff. Therefore, Gotham, as the drawer, did not have the capacity of a holder necessary to indorse these instruments. Since Gotham could not be an indorser, the written instructions on the checks cannot be qualified or restrictive indorsements. The instructions, not being indorsements, are merely requests to plaintiff who may or may not comply at its own pleasure. The instructions are neither binding on plaintiff nor the subsequent holders. The effect is similar to that of written memoranda for the benefit of the drawer.
*549 Regardless of the effect of these written instructions, the consignor, Silver Creations, by accepting a form of payment which is allegedly not in conformance with the shipping contract, waives any objections or claims for breach which he may have against the carrier. Therefore, even if these instruments were in breach of contract, it ratified the actions of defendant so as to preclude a subsequent claim for breach when it accepted these checks without qualification.
This doctrine was espoused in Rathbun v. Citizens' Steamboat Company, 76 N.Y. 376 (Ct. App. 1879). There the carrier was authorized to accept only cash as payment from the consignee. The carrier accepted a check, clearly in breach of the contract, and delivered it to the consignor. The consignor accepted the check without qualification or objection and transmitted it for collection. The court ruled that the acceptance of a form of payment not in conformance with the original terms of the contract between carrier and consignor, constitutes a ratification of the carrier's actions. Such unconditional acceptance waived any future claims against the carrier for breach of contract upon subsequent dishonor of the check. The court noted that since there was no dispute that the carrier was in breach, the carrier would have been liable to the consignor if the consignor "had refused to accept the check, or had accepted it in a qualified manner." Id. at 380 (32 Am. Rep. 321, 322). However, the court added that
The circumstances here are capable of but one construction according to the mode and habits of business, and that is, that the plaintiffs adopted and ratified the act of the carrier, by the unqualified acceptance of the check. [at 324]
This doctrine of waiver, as espoused in Rathbun, was adopted in New Jersey in the case of S.B. Penick & Co. v. Triple "M" Trans. Co., 131 N.J.L. 114 (Sup. Ct. 1943). In that case a carrier accepted a post-dated check contrary to the terms of a C.O.D. contract. The consignor *550 accepted the check subject to the qualification that he would assume no responsibility for collection. Although the court held that this qualified acceptance was sufficient to preserve the consignor's cause of action of current date, the court did adopt the rationale of Rathbun when it noted that a "shipper may waive its rights by an unqualified acceptance of that which the carrier has taken in lieu of money or of that which it was authorized to receive." Id. at 115.
The Rathbun decision was re-examined in Compuknit Indus., Inc. v. Mercury Motors Exp. Inc., 72 Misc.2d 55, 337 N.Y.S.2d 918 (Civ. Ct. 1972). There plaintiff attacked the validity of Rathbun in light of modern business practices, asserting that the doctrine of waiver contradicts the doctrine that a party should attempt to avoid or lessen the extent of damage before resorting to litigation. Plaintiff relied on Freedman & Slater, Inc. v. Great Lakes Forwarding Corp., 7 A.D.2d 978, 183 N.Y.S.2d 684 (App. Div. 1959), in which the court, although reluctantly following Rathbun, stated that a better theory would be that a consignor's rights against a carrier accrue at the time of the breach and that "consequently plaintiff had the right * * * to deposit the check" until actual dishonor to avoid damage before resorting to litigation. In spite of this argument, the court in Compuknit upheld the Rathbun rationale that actions such as acceptance, holding or depositing, constitute a waiver of any rights against the carrier for breach.
In this case, plaintiff argues that the issue before the court is what responsibility a common carrier assumes when it contracts to make a C.O.D. delivery. Plaintiff states that between the carrier and the shipper, the party most able to prevent loss is the carrier; since the shipper is not present, the carrier is his sole agent and must inspect the instrument. Plaintiff argues that the driver could have inspected the reverse side of the instrument just as easily as *551 its face and was under a duty to report any deficiency to the shipper prior to releasing the goods. Plaintiff also asserts that to hold that a carrier making a C.O.D. delivery does not have a duty to examine the reverse side of an instrument, which was presented in payment on a C.O.D. order, would defeat the purpose of C.O.D. deliveries since C.O.D. shipments are used to protect a shipper who is unwilling to relinquish possession of his goods until he is certain of payment. Plaintiff further asserts that a holding that a carrier is not responsible for examining the entire document, accepted as payment, would transform a C.O.D. shipment from a protective device to a means by which purchasers could commit fraud.
Plaintiff's argument appears to be displaced in light of the facts of this case. First, to hold in conformance with plaintiff's assertions would require this court to hold that the written instructions have an effect on the nature and effect of the instrument. Secondly, plaintiff appears to misconstrue the nature of a C.O.D. contract. In the Compuknit decision the nature of C.O.D. shipments was examined in light of modern commercial practices with specific attention to the use of checks in C.O.D. contracts.
In affirming Rathbun the court in Compuknit also held that the acceptance of a post-dated check did not constitute a breach of the C.O.D. contract. The court stated that the fact that a post-dated check was dishonored had no different effect than had a demand check been dishonored when presented for payment. Recognizing that "cash on delivery" contracts do not normally mean checks will be valid payment, the court found that the consignor had assumed a risk when it altered the C.O.D. contract to an authorization to receive checks. The court stated:
In effect, it relinquished control over the shipped goods and chose to rely upon its customer's credit as represented by the check whether demand or postdated. * * *. Both are equally dependent upon the customer's credit. [337 N.Y.S.2d at 921, 922]
*552 Thirdly, the above language from the Compuknit decision is especially significant in this case since the contract between the parties included a clause which stated:
* * * unless instructions to collect cash only written on the C.O.D. tags, the carrier will accept checks from consignees in payment of C.O.D.'s. Such checks accepted at the risk of the shipper, will be transmitted to the shipper together with the carriers own check for amounts collected in cash. [Emphasis added]
While this court had previously determined as a matter of law that these checks were not post-dated, the rationale employed by the court in Compuknit is still relevant in this matter. A check merely constitutes a promise to pay, and conceivably it is always subject to dishonor. Plaintiff, by authorizing defendant to accept checks as payment, modified the shipping contract from the classical C.O.D. contract which affords a shipper the security that he has been paid before his goods are released, to a contract in which he received merely a promise that he would be paid in the future. He received merely a written confirmation of the debt and a promise to pay. Plaintiff would not have received the type of protection that he attributes to C.O.D. deliveries even if these checks had contained no written requests on their reverse side. There existed no assurance that the consignee had funds to cover the face amounts of the checks when they were initially presented to defendant in exchange for the plaintiff's goods.
Furthermore, the litigation in this case did not arise from the failure of the carrier to inspect the reverse side of the checks. Plaintiff is now suing defendant carrier simply because Gotham, the consignee, did not have sufficient funds to cover the debt. Plaintiff asserts breach of contract in the hope of finding another means to offset his loss. Never has it been asserted that the instrument was dishonored by the bank because it was not a check, nor that the bank refused to honor the check due to any adherence to  or objection to  the instructions on the reverse side. The bank was *553 willing to honor the check but for Gotham's insufficient accounts and financial status.
In conclusion, it is undisputed that C.O.D. shipments are a device to protect shippers. It is also undisputed that if a carrier breaches his duty to collect the price or collects a form of payment not in conformance with the delivery contract, the carrier is liable for "whatever it would have collected if the duty had been fulfilled." S.B. Penick & Co. v. Triple "M" Transp. Co., 131 N.J.L. 114, 115 (Sup. Ct. 1943). However, this does not mean that the shipper is thereby absolved from responsibility for his own actions; the shipper may waive his rights against the carrier by an unqualified acceptance of whatever the carrier collects in lieu of that which it was authorized and required to receive.
In the present case plaintiff decided to follow the instructions on the reverse side of the instruments and withheld depositing the checks. The issues are not the duty of inspection the carrier had under the contract, nor who was in a better position to examine the checks. Those issues have been waived by plaintiff's unqualified acceptance of the checks, and his ratification of the carrier's actions by withholding deposit as Gotham had instructed. The law of contracts and waiver, as expressed in Rathbun and Penick, adequately protects all parties involved.
For all the aforestated reasons, judgment must be entered in favor of defendant United Parcel Service.