**COMPUTEL, INC., a Florida Corp.,
Plaintiff–Appellee,**

v.

**EMERY AIR FREIGHT CORP.,
Defendant–Appellant.**

No. 89–6303.

United States Court of Appeals,
Eleventh Circuit.

Dec. 18, 1990.

less concludes that punitives must be awarded

for those purposes.

special instruction that Defendant collect a cashier's check from a consignee was not a modification of the shipment contract. The court therefore concluded that Emery, in accepting the consignee's corporate check, breached the contract by failing to pick up Computel's specified form of payment. The court also found that Emery had failed to designate any material facts showing Computel's ratification of the breach under applicable Florida law. Although we agree with the district court that partial summary judgment was proper as to the existence of a contract between the parties to deliver the shipment on a cashier's check basis, we think there is a jury question as to whether Emery's conduct was ratified by Computel's subsequent unconditional deposit of the consignee's corporate check. Accordingly, we AFFIRM the district court's finding of breach by Emery of a contract for C.O.D. cashier's check delivery, but VACATE and REMAND the case for trial on the issue of ratification.

Lawrence D. Smith, Geoffrey B. Marks, Walton, Lantaff, Schroeder & Carson, Miami, Fla., for defendant-appellant.

Martin L. Roth, Miami, Fla., for plaintiff-appellee.

Before FAY and JOHNSON, Circuit Judges, and ALLGOOD *, Senior District Judge.

FAY, Circuit Judge:

Computel, Inc. and Comtrad International Corp. ("Computel"), the Plaintiffs–Appellees/shippers, were granted summary final judgment on a breach of contract claim against Defendant–Appellant/carrier Emery Air Freight Corp. ("Emery") in the amount of $38,625.21. The district court held that even when considered in the light most favorable to the carrier, Plaintiffs'

## BACKGROUND

The facts of this breach of contract action are relatively undisputed by the parties. As the shipper, Computel contracted with Emery in Miami, Florida, for delivery of various computer goods to American Shop at Home, Inc. ("Consignee") in New York, New York. On December 23, 1988, Jose Fraga, the operations manager for Computel, telephoned Emery's service information number, 1–800–HI–EMERY. Fraga testified by affidavit that Emery's service representative told him that the carrier would deliver Computel's shipment to the Consignee and obtain a cashier's check for payment. According to Fraga, Emery's telephone representative instructed him to write "C.O.D. cashier's check" in the "Special Instructions" box of the preprinted Emery Air Waybill, which he did.

Emery's driver subsequently picked up and accepted Computel's shipment for delivery. "C.O.D. Cashier Check" was written in the "Special Instructions" box of the

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

waybill, and the sum of $34,669.74 was written in the "Check to Shipper" and "Declared Value" boxes. Emery delivered the shipment to the Consignee, and collected a corporate check payable to Computel, bearing the Consignee's name and address. Emery then delivered the check to Computel, who received, accepted, stamped and deposited the check unconditionally in its bank account. Computel's president, Claudio Osorio, did not discover that the check in question was not a cashier's check until the check was returned to Computel stamped "Account Closed." After receiving the dishonored check, Computel brought a multi-count action against Emery, essentially maintaining that the carrier failed to fulfill a contract to deliver computer products to a third party and obtain, in return, a valid cashier's check.

In answering Plaintiffs' complaint, Emery raised several affirmative defenses, including: a) Defendant was not a guarantor of collection; b) the parol evidence rule barred any oral written change to the printed contract; c) Defendant had no liability to collect anything more than a check or money order (an obligation which Defendant contends did not encompass collection of cashier's checks); d) Plaintiff accepted and deposited the check tendered by the consignee without protest; and e) the printed contract of the parties could not be altered. Emery also filed, in response to Plaintiffs' motion for summary judgment, an affidavit of Emery's Operation's Manager, Chuck McGinley, who stated that as a business practice of Emery, "CTS shipments do not include a provision for Emery to pick up a cashier's or certified check." McGinley also stated that "[t]he air waybill has a provision for Emery to ship CTS; however, no provision is included for C.O.D., or cashier's check delivery because Emery does not offer that service."

Upon review of Plaintiffs' motion for summary final judgment on its breach of contract claim, as well as the affidavits, pleadings, and memoranda filed in opposition by Defendant, the trial court granted Plaintiffs' motion and entered a final judgment of $38,625.61 for Computel. This appeal followed.

## DISCUSSION

In an appeal from an order granting summary judgment, this court's review is plenary, and we apply the same legal standards as those that controlled the district court in determining whether summary judgment is appropriate. *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1382–83 (11th Cir.1990); *Thrasher v. State Farm Fire & Cas. Co.*, 734 F.2d 637, 638 (11th Cir.1984). We therefore examine the record in the light most favorable to the party opposing the motion, and resolve all reasonable doubts about the facts in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Hoffman*, 1382–83; *Bannum, Inc. v. City of Ft. Lauderdale*, 901 F.2d 989, 996 (11th Cir.1990); *Thrasher*, 734 F.2d at 639. If "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact," summary judgment is proper and the moving party is entitled to a judgment as a matter of law. Fed.R. Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

In ruling on Plaintiffs' motion, the district court found two issues of law presented by the pleadings: 1) Whether there existed a contract between Emery and Computel for Emery to deliver the shipment on a C.O.D. cashier's check basis; and 2) If such a contract indeed existed, whether Emery's conduct with regard to the contract was ratified by Computel's subsequent conduct in depositing the corporate check. The parties have accepted this consolidation of the issues; we consider each below.

### I. *The Breach of Contract Claim.*

As the district court observed, the dispute as to the existence of a contract between Emery and Computel turns on whether Computel's instruction specifying a C.O.D. cashier's check payment was consistent with the terms and conditions of

delivery, as expressed in Emery's service guide and pre-printed air waybill. Emery contends that the air waybill and Emery Service contract prohibit any modification of their preprinted terms by any Emery employee or customer, and that the instruction requiring Emery to obtain a cashier's check was an inconsistent, unlawful alteration of the carriage contract. We disagree.

 Paragraph VIII, subsection 4 of the Emery service guide provides for Check to Shipper (C.T.S.) service:

> THE FULL AMOUNT OF THE C.T.S. MUST BE PAID BY THE CONSIGNEE'S CHECK OR MONEY ORDER MADE PAYABLE TO THE SHIPPER. EMERY'S SOLE RESPONSIBILITY SHALL BE TO ACCEPT THE CONSIGNEE'S CHECK OR MONEY ORDER AND EXERCISE DUE CARE AND DILIGENCE IN MAILING IT TO THE SHIPPER. THE CHECK OR MONEY ORDER WILL BE MAILED TO THE SHIPPER WITHIN TEN (10) BUSINESS DAYS AFTER RECEIPT BY US. WE SHALL HAVE NO RESPONSIBILITY NOR LIABILITY WITH RESPECT TO PAYMENT OF THE CHECK OR MONEY ORDER. OUR CHARGE FOR THE C.T.S. SERVICE OR ANY OTHER CHARGE PAYABLE TO US MUST NOT BE INCLUDED IN THE CONSIGNEE'S CHECK OR MONEY ORDER PAYABLE TO THE SHIPPER.

It is true that according to the terms and conditions on the reverse side of the waybill, no employee or agent of the parties may modify the terms and conditions of the service contract. But we agree with the district court that "neither the Terms and Conditions in the service guide nor the air waybill indicate in any way that a cashier's check is excluded from the definition of 'Check or Money Order' as it pertains to [Emery's] Check to Shipper Service." (R1–25).[1]

Indeed, Emery's own employee represented to Computel that Emery would deliver goods on a C.O.D cashier's check basis.[2] Even when viewed in the light most favorable to the carrier, none of the affidavits submitted by Emery disputes that its telephone employee made such a representation, or that the representation is in any way inconsistent with the plain language of the service guide.[3]

---

1. While not disputing that a "cashier's check" is a species of "check," Emery argues that "it must be inferred that a cashier's check is not to be presumed within the definition of 'consignee's check or money order,' when viewed in light of the limitation of liability and Emery's responsibility in C.T.S. service." *Reply Brief of Appellant* at 4–5. The argument is specious. The statements "EMERY'S SOLE RESPONSIBILITY SHALL BE TO ACCEPT THE CONSIGNEE'S CHECK OR MONEY ORDER AND EXERCISE DUE CARE AND DILIGENCE IN MAILING IT TO THE SHIPPER.... WE SHALL HAVE NO RESPONSIBILITY NOR LIABILITY WITH RESPECT TO PAYMENT OF THE CHECK OR MONEY ORDER" clearly relieve Emery from being held liable simply for delivering a consignee's check that subsequently bounces. They do not relieve Emery of its obligation to collect the proper form of payment specified in the contract.

2. As the district court observed:
> Such representation does not in any way contradict or expand what is contained in the Emery service guide at paragraph VIII or the Terms and Conditions of the Contract noted in the air waybill. Indeed, the Emery Service number 1–800–Hi–Emery is presumably set up to give Emery customers information about its services. There is no indication in any of Defendant's printed instructions that customers should not rely on the representations of its employees answering inquiries of callers to that number.
> (R1–25).

3. Emery's employee, Jesus Rodriguez, the driver who picked up the shipment, does not deny that he accepted goods for shipment with the air waybill bearing the special instruction "C.O.D. cashier check" marked in the appropriate box. Although his affidavit states that he is familiar with Emery's terms and conditions of contract for shipment, and that he "would not authorize the collection of a cashier's check for payment of a shipment," he does not deny that he did so on the occasion in question. *Affidavit of Jesus Rodriguez,* (R1–20). As the district court noted, the "uncontested fact is that Rodriguez picked up the package and accepted it for delivery under the terms expressed on the air waybill. The air waybill indicated that carrier was specially instructed to deliver the shipment C.O.D. cashier's check." (R1–25).

Contrary to Emery's assertion, the affidavit of its operations manager, Chuck McGinley, raises no issue of fact that would render the district court's summary judgment on this question improper. McGinley states that "CTS shipments do not include a provision for Emery to pick up

After careful review of the record in the light most favorable to Emery, we agree that summary judgment on this issue was proper. The district court did not err in finding that there was a contract between the parties for the delivery of a shipment of computer goods on a cashier's check basis, and that Emery breached this contract in failing to pick up a cashier's check from consignee when it delivered the shipment.

## II. *Ratification.*

The remaining question is whether Computel's subsequent behavior ratified Emery's breach: Did Computel, the principal, by accepting and unconditionally depositing the Consignee's corporate check, ratify its agent Emery's unauthorized acceptance and delivery of a form of payment other than that specified in the carriage contract? On this point, we disagree with the district court's summary judgment that no ratification occurred as a matter of Florida law.[4]

In *United Parcel Service v. World Time Corp. of America*, 556 So.2d 1223 (Fla. 4th DCA 1990), the shipper World Time unconditionally accepted and deposited nonconforming certified checks that carrier UPS had collected from the consignee. In a brief opinion, the Florida appellate court reversed and remanded on three grounds, the third of which addressed "ratification by World Time corporation of United Parcel's acceptance of the certified checks":

> World Time unconditionally accepted and deposited the checks with no notice to United Parcel that its acceptance was qualified by an attempt to mitigate damages or otherwise reserve rights to hold United Parcel liable if the nonconforming checks proved to be worthless. World time knew the terms of its C.O.D. instructions and was presumed to know the terms of the tariff but nevertheless deposited the checks, unconditionally. Such actions establish an unequivocal and binding ratification of United Parcel's acceptance of the checks.

556 So.2d at 1224 (citations omitted).[5]

Applying *World Time*'s logic to the facts here, Computel certainly knew the terms of delivery, "C.O.D cashier check," that it specified in the "Special Instructions" box of the Emery airbill. It nevertheless deposited the Consignee's corporate check unconditionally into its account. "In actions such as this where a shipping cus-

---

a cashier's check." *Affidavit of Chuck McGinley,* (R1–16). He also states that "[t]he air waybill has a provision for Emery to ship CTS; however, no provision is included for C.O.D., or cashier's check delivery because Emery does not offer that service." *Id.* If, however, as the plain language of the service guide suggests (and Emery offers no evidence to refute), the delivery of a cashier's check is subsumed under the language "check or money order" in the CTS provision, the absence of separate provisions providing for cashier's check delivery is irrelevant in determining whether such a form of payment is consistent with the specified terms of the contract.

4. In ruling on the ratification issue, the district court found as follows:

> In the deposition of Claudio Osorio[, the president of Computel,] at paragraphs 8 and 9, *Plaintiff states the circumstances of the deposit of the check. Defendant does not dispute these facts. A clerk of Plaintiff's company, performing ministerial duties, put the company stamp on the check and placed it for deposit. The fact that a cashier's check was not received came to Osorio's attention as a result of the corporate check being returned*

by the bank. In finding that this does not result in ratification the Court relies on its decision in *Streiff Jewelry Co. v. United Parcel Service,* 670 F.Supp. 341 (S.D.Fla.1987). Under very similar circumstances, this Court ruled that before a ratification can be inferred, the principal must knowingly and willfully act in a manner consistent with abandonment of his contractual rights. In order for there to be ratification here, defendant would have to show that Plaintiff deposited the check with full knowledge and intention that this would constitute an approval of Defendant's act and that there has been no such showing. Consequently, the court finds that there was no ratification. (R1–25).

5. While admitting that the Florida court's holding in *World Time* is "potentially divergent" from its interpretation of applicable Florida precedent concerning ratification, Computel asserts that the discussion of ratification in *World Time* is *dicta. Brief of Appellees* at 17. This is simply not accurate. The Florida court's reversal of the trial court was explicitly predicated on "three factors," the third of which was ratification. *See World Time,* 556 So.2d at 1223.

tomer sues his carrier for allegedly collecting an unauthorized form of payment, the vast majority of jurisdictions agree that ratification will be found where the shipping customer unconditionally deposits this unauthorized form of payment into its account, knowing that it deviates from the form of payment specified." *Karat Gold Imports, Inc. v. United Parcel Service,* 1989 WL 98764 at 5 (Ohio Ct.App. August 24, 1989); *see, e.g., Comark, Inc. v. United Parcel Service, Inc.,* 701 F.Supp. 641, 646 (N.D.Ill.1988); *Mountain States Waterbed Distributors, Inc. v. O.N.C. Freight Systems Corp.,* 44 Colo.App. 433, 614 P.2d 906 (1980); *Bond Rubber Corp. v. Oates Bros.,* 136 Conn. 248, 70 A.2d 115 (1949); *Silver Creations, Ltd. v. United Parcel Service,* 133 N.J.Super. 543, 337 A.2d 641 (1975); *Rathbun v. Citizens Steamboat Co.,* 76 N.Y. 376 (1879); *American Machinery & Motor Co. v. United Parcel Service,* 383 N.Y.S.2d 1010, 87 Misc.2d 42 (N.Y.City Civ. Ct.1976); *Compuknit Industries, Inc. v. Mercury Motors Express, Inc.,* 337 N.Y. S.2d 918, 72 Misc.2d 55 (N.Y.City Civ.Ct. 1972); *Chaning v. Riddle Aviation Co.,* 119 N.Y.S.2d 552, 203 Misc. 844 (N.Y.Mun. Ct.1953). That is, "the vast majority of jurisdictions have determined that the requirement of 'full knowledge of the facts' was satisfied where the evidence showed that the shipping customer *was aware that the carrier had collected a variant form of payment.*" *Karat Gold Imports,* 1989 WL 98764 at 6 (emphasis supplied).

■■■ In this case, the ratification question centers upon the highlighted language above. One of the primary elements of the doctrine of ratification is knowledge of the material facts. Thus, Computel relies on a line of Florida cases articulating the well-settled rule that "[b]efore one may infer that a principal ratified the unauthorized act of his agent, the evidence must demonstrate that the principal was fully informed and that he approved of the act." *United*

*Parcel Service v. Buchwald Jewelers,* 476 So.2d 772 (Fla. 3d DCA 1985); *Pedro Realty, Inc. v. Silva,* 399 So.2d 367 (Fla. 3d DCA 1981); *Bach v. State Bd. of Dentistry,* 378 So.2d 34 (Fla. 1st DCA 1979); *G & M Restaurants Corp. v. Tropical Music Service, Inc.,* 161 So.2d 556 (Fla. 2d DCA 1964); *Ball v. Yates,* 158 Fla. 521, 29 So.2d 729 (1946), *cert. denied,* 332 U.S. 774, 68 S.Ct. 66, 92 L.Ed. 359 (1974). *See generally* 2 Fla.Jur.2d *Agency and Employment* § 52 (1979) (knowledge of facts by principal). In deposition testimony, the president of Computel, Claudio Osorio, stated that the checks that come into the company are simply stamped and processed by administrative employees who "don't have to qualify or evaluate the type of payments they receive."[6] Because the check in question was processed by a ministerial employee "who was without knowledge that the check did not conform to the requirements of the contract," Computel argues that depositing Consignee's check was not a "fully informed knowing act of ratification." *Brief of Appellees* at 16–17. We disagree, at least for purposes of summary judgment.

In this case, the undisputed evidence established that Computel was the party who imposed the requirement of payment by cashier's check. *See Mountain States,* 44 Colo.App. at 436, 614 P.2d at 907. Further, the waybill in the record is clearly marked "shipper's copy." Knowledge of the "C.O.D. cashier check" requirement thus was apparently available to Computel's officers and employees in the shipper's files. *See id.* In addition, cashier's checks are clearly marked, and generally, a recipient is charged with knowledge when a check is not a cashier's or certified check. *See id.* The question here is whether the knowing ratification requirement of being fully informed at the time of affirmance, expressed in *Buchwald Jewelers,* limits the applicability of the analysis in *World Time,*

---

6. The key exchange was as follows:

Q: So, your testimony is that prior to the deposit of this in the bank, this check, that nobody checked it to determine whether it conformed to the method of payment that you had requested from [the Consignee]?

A: That's correct. They just received the check and stamped it. There is no signature on the bank [SIC] as you can see. And they deposit it.

*Deposition of Claudio Osorio,* (SR1).

which would otherwise suggest a finding of ratification. We do not think that *Buchwald Jewelers* presents a problem.[7]

Section 91(1) of the Restatement (Second) of Agency dealing with the knowledge of a principal at the time of affirmance or ratification is instructive, and expresses the principle articulated by the *Buchwald Jewelers* line of cases: "If, at the time of affirmance, the purported principal is ignorant of material facts involved in the original transaction, *and is unaware of his ignorance,* he can thereafter avoid the effect of the affirmance." *Restatement (Second) of Agency* § 91(1) (1957). Specifically, comment e speaks to when a principal assumes the risk of lack of knowledge:

> If the purported principal is shown to have knowledge of facts which would lead a person of ordinary prudence to investigate further, and he fails to make such investigation, his affirmance without qualification is evidence that he is willing to ratify upon the knowledge which he has. Likewise, if, learning that one who had no authority acted for him, he affirms without qualification and without investigation, when he has reason to believe that he does not know all the facts, it may be inferred that he is willing to assume the risks of facts of which he has no knowledge.

*Id.* Indeed, in *Oxford Lake Line v. First Nat. Bank of Pensacola,* 40 Fla. 349, 359–60, 24 So. 480, 483 (1898), the Supreme Court of Florida observed:

Generally speaking, it does not devolve upon the principal to make inquiries as to the facts. He has a right to presume that his agent has followed instructions, and has not exceeded his authority. Whenever he is sought to be held liable on the ground of ratification, either express or implied, it must be shown that he ratified upon full knowledge of all material facts, *or that he was willfully ignorant, or purposely refrained from seeking information, or that he intended to adopt the unauthorized act at all events, under whatever circumstances.*

(emphasis added); *see also Gordon v. Pettingill,* 105 Colo. 214, 218, 96 P.2d 416, 418 (1939) (full knowledge for purposes of ratification included that knowledge which "reasonable diligence would disclose," and principal's lack of knowledge cannot be established by showing that he was "ignorant of facts it was in his interest to know, and which, if awake, he would have known").

Claudio Osorio, the president of Computel, in effect testified that no one at the company analyzes the quality of incoming payments or the payments' conformity with prior instructions before they are deposited by administrative clerks. Osorio's awareness of such a structure for accepting incoming payments, considered in the light most favorable to Emery, could be found to reasonably imply that Computel intentionally refrains from checking incoming payments against the form of payment specified to its carriers. Computel appears to

---

**7.** The district court reached its conclusion of no ratification by relying on its decision in *Streiff Jewelry Co. v. United Parcel Service,* 670 F.Supp. 341 (S.D.Fla.1987), *vacated,* 679 F.Supp. 7 (S.D. Fla.1988), a factually similar case. *Streiff Jewelry* held that under Florida law, a consignor's acceptance and deposit of a cashier's check delivered by UPS, occurring after the consignor had expressly contracted for shipment on a "cash-only" basis, did not constitute a ratification of UPS's acceptance of the nonconforming payment (which later proved to be counterfeit). The court noted that the consignor's deposition testimony established that he was not fully familiar with the type of C.O.D shipment at issue in the case, and specifically, was not aware that by depositing the counterfeit check he would lose any contractual rights against UPS. 670 F.Supp. at 343. Thus, the court cited *Buchwald Jewelers,* and concluded

that there was no knowing ratification of UPS's conduct. While the district court was certainly free to act as it did in adopting its prior reasoning in *Streiff Jewelry,* the latter case was vacated on settlement, and we therefore need not consider in detail whether it was a correct application of the Florida law expressed in *Buchwald Jewelers.*

Nevertheless, it is significant that the Florida court's admittedly rather sparse opinion in *World Time* does cite the vacated opinion in *Streiff Jewelry* as *contrary* authority, yet uses the *compare* signal in citing *Buchwald Jewelers.* While the *World Time* court did not elaborate, it is obviously clear that it considered *Buchwald Jewelers* a distinguishable case. We think the facts of this case are clearly distinguishable from *Buchwald Jewelers* as well. *See infra* note 8.

deposit checks unconditionally "whatever the circumstances." We believe that the above-mentioned authority suggests that Computel cannot specify one form of payment, set up a procedure whereby it is *willfully ignorant* of whether the incoming payment conforms with the company's original payment instructions (copies of which are presumably readily available in its files), unconditionally accept and deposit a varying form of payment, and then argue lack of knowledge when an unfortunate dishonoring or "bouncing" of payment occurs.[8]

Further, Florida case law acknowledges the general principle of agency law that knowledge of, or notice to an agent or employee is imputed to the principal when it is received by the employee within the scope of her employment, and when it is in reference to matters over which the employee's authority extends. *Anderson v. Walthal*, 468 So.2d 291 (Fla. 1st DCA 1985). *See generally* 2 Fla.Jur.2d *Agency and Employment* § 94 (1977).[9] Thus, if 1)

Computel's ministerial employees were on notice that cashier's checks differ from corporate checks; 2) if Computel kept Emery's waybill on file, i.e. possessed the means to easily verify whether the payments were conforming but, as Osorio's testimony suggests, chose not to do so; and 3) Computel nonetheless deposited the payments unconditionally, it seems that "full knowledge" could be imputed to Computel for ratification purposes. *See also Comark, Inc.*, 701 F.Supp. at 646 ("Comark had knowledge of all material facts. It understood the nature and purpose of all the checks when it deposited them. It is clearly charged with knowledge of what kind of payment it had requested from UPS in each instance.").

At the very least, we think that when the facts and testimony are considered in the light most favorable to Emery, especially in light of *World Time* and the foregoing analysis, Computel's intent to ratify is a jury question not appropriately decided on summary judgment. Accordingly, the or-

**8.** Such an inference from Osorio's testimony clearly distinguishes the facts of this case from *Buchwald Jewelers*. In that case, the deposition testimony of the consignor Buchwald revealed that although he had received and deposited a cashier's check (which had been wrongfully accepted and delivered by UPS) instead of the "cash-only" payment specified in the carriage contract, he had done so under the *mistaken* impression that UPS had in fact accepted cash as required, and then itself converted the payment into a cashier's check for delivery to Buchwald. 476 So.2d at 773. Since the principal's testimony was undisputed, the court found that Buchwald had deposited the check without knowing that UPS had acted contrary to its express instructions, and therefore that Buchwald was not fully informed. *Id.*

**9.** Applying such a principle to the facts of this case seems to yield a conclusion analogous to that of the Supreme Court of Connecticut in *Bond Rubber*, a case dealing with a carrier's unauthorized acceptance and a bookkeeper's subsequent unconditional deposit of a certified check:

> The plaintiff unconditionally accepted the two checks, and knew, or was charged with knowledge, that they were uncertified. Before entering "Paid" against the account, the bookkeeper must have looked at the checks to verify the amount at least. Certifications of checks are not hidden. Their very purpose

requires that they be clearly so marked. The bookkeeper, as a reasonable person, could not fail to notice that the checks were not certified. Her knowledge was the knowledge of the plaintiff.

70 A.2d at 117.

Indeed, in *Mountain States*, a case virtually identical to this one, the shipper's office manager testified that she deposited the consignee's check as "'normal office procedure.'" *Mountain States*, 44 Colo.App. at 435, 614 P.2d at 907. She further testified that she did not notice that it was not a cashier's check, that she previously handled the carrier's business without any problem, and that the shipper had no system for determining whether checks it received were in conformance with the bill of lading. *Id.* The appellate court held that the trial court "erred in finding that the shipper lacked full knowledge of the pertinent facts and hence did not ratify the carrier's act," where the undisputed evidence established that the shipper had imposed the requirement of payment by cashier's check, knowledge of the requirement was available to officers and employees in the shipper's files, and cashier's checks are clearly distinguishable from ordinary checks. *Id. But see Smart Data, Inc. v. United Parcel Service*, 195 Ill.App.3d 779, 142 Ill.Dec. 348, 552 N.E.2d 1089 (1989) (reversing summary judgment of ratification for carrier and remanding for jury trial where it was not clear that clerical office employees in fact knew or understood that there had been a breach when the checks were deposited).

der of the district court is AFFIRMED in part, but VACATED and REMANDED for trial on the issue of ratification.[10]

JOHNSON, Circuit Judge, dissenting:

I agree with the panel's holding that Emery breached its contract with Computel. I cannot agree, however, with the panel's holding that Computel may have ratified Emery's action by simply depositing the non-conforming check. I therefore dissent.

As the majority observes, under Florida law, one asserting ratification must show that the principal accepted the agent's conduct "upon full knowledge of all material facts, or that [the principal] was willfully ignorant, or purposely refrained from seeking information, or that he intended to adopt the unauthorized act at all events, under whatever circumstances." *Oxford Lake Line v. First Nat'l Bank of Pensacola*, 40 Fla. 349, 24 So. 480, 483 (1898). The majority takes the position that, based on the deposition of Claudio Osario, Computel may have ratified Emery's acceptance of the non-conforming payment by remaining "willfully ignorant." Osario's deposition shows that he was aware that the office clerks at Computel did not analyze the quality of incoming payments or attempt to confirm the payments' compliance with prior instructions before depositing them. From this fact, the majority infers that Computel may have intentionally refrained from investigating whether its carriers complied with instructions regarding the form of payment the carrier was to accept. In my view, such an inference requires a long leap. Though it is possible to infer from Osario's statement that the system has the effect of keeping the company in the dark as to whether the carrier has performed as promised, I do not believe that we can also infer that Osario "willfully" or intentionally established this office procedure in order to insulate the company from an affirmative defense of ratification.

This long leap is especially troublesome because it goes directly against the lan-

guage of *Oxford Lake Line*. That case states that "it does not devolve upon the principal to make inquiries as to the facts. He has a right to presume that his agent has followed instructions...." *Id.* This language clearly places the burden of showing that the principal remained "willfully ignorant" upon the defendant who asserts ratification as an affirmative defense. *See also Bach v. Florida State Bd. of Dentistry*, 378 So.2d 34, 37 (Fla.Dist.Ct. App.1979) (stating that "[t]here is no duty imposed upon the principal to make inquiries as to whether his agent has carried out his responsibilities"). If we allow the fact that Computel's office procedure presumes that Emery has followed instructions to stand as the basis for a showing that Computel was "willfully ignorant," then we inappropriately shift this burden. I find no precedent in Florida law for such a shifting of the burden in an affirmative defense, even when viewing the facts in a light most favorable to the nonmovant on a summary judgment motion.

I would therefore affirm the district court's grant of summary judgment in favor of Computel.

---

10. We note that, in the event Emery's liability is established, neither party contests the amount

of damages awarded by the district court.