862 So.2d 1112 (2003)
WISNER ELEVATOR COMPANY, INC., Plaintiff-Appellant,
v.
RICHLAND STATE BANK, Defendant-Appellee.
No. 37,764-CA.
Court of Appeal of Louisiana, Second Circuit.
December 12, 2003.
McGlinchey Stafford, PLLC, by James C. Crigler, Jr., New Orleans, for Appellant.
Cotton, Bolton, Hoychick & Doughty, L.L.P., by David P. Doughty, Rayville, for Appellee.
Before BROWN, GASKINS and CARAWAY, JJ.
GASKINS, J.
Wisner Elevator Company, Inc. ("Wisner"), appeals from a summary judgment in favor of the defendant, Richland State Bank. At issue is the deposit of a check with a typed statement on the back directing that a portion of the funds be paid to a third party. We affirm the trial court judgment.

FACTS
On July 13, 2001, the United States Treasury, through the Farm Service Agency, issued a check in the amount of $17,420.00, made payable to Chad E. Gill. On the back of the check the following was typed:

*1113 PAY TO THE ORDER OF RICHLAND STATE BANK FOR ISSUANCE OF A CASHIER'S CHECK PAYABLE TO WISNER ELEVATOR IN THE AMOUNT OF $13,200.50 AND PAY THE BALANCE TO CHAD GILL IN THE AMOUNT OF $4,219.50.
On July 23, 2001, the check was deposited into Gill's checking account at Richland State Bank. Gill's signature is found on the back of the check below the typed paragraph. No cashier check to Wisner Elevator was issued; instead the entire amount was deposited into Gill's checking account as per Gill's deposit ticket.
On May 13, 2002, counsel for Wisner made amicable demand upon Richland State Bank. On May 28, 2002, Wisner filed suit against the bank, claiming that its failure to apply the funds as per the restrictive indorsement constituted a conversion of the portion of the check due to Wisner under La. R.S. 10:3-206(c)(2).[1]
On June 10, 2002, the bank filed peremptory exceptions of no right/cause of action and an answer. In its exceptions, it asserted that the indorsement on the back of the check was a conditional indorsement and ineffective under La. R.S. 10:3-206(b).[2] The bank also argued that Wisner had no standing or right of action to sue because it was not a payee, indorsee or holder of the check. In its answer, the bank asserts the fault of the United States Treasury and/or the U.S. Department of Agriculture and/or the Farm Service Administration, in failing to make the check payable to both Gill and Wisner. To the extent that the indorsement was conditional, the bank contends that it was unenforceable; to the extent that it was restrictive, it maintains that the restrictions were waived by the indorser when he deposited the full amount of the check into his own checking account.
On June 26, 2002, Wisner filed a motion for summary judgment. Attached to the motion was an affidavit by Brad Terral, the president of Wisner, stating that Wisner was owed $13,200.50 by Gill for seeds, chemicals, crop supplies and agricultural seed technology fees. He further stated that Gill never paid the $13,200.50 he owed and that Wisner did not receive a cashier's check issued in that amount by Richland State Bank.
On August 20, 2002, Richland State Bank filed a motion for summary judgment. Attached to the motion was an affidavit by Hettie Hastings, the bank teller who handled the transaction. According to her, Gill asked to deposit the entire amount in his account. She further stated that the bank was unaware that the indorsement was written by someone other than Gill.
*1114 The parties agreed that the facts were not in dispute and submitted the cross motions for summary judgment to the trial court on memorandums. The court found that the typed indorsement placed on the check was the indorsement of the maker, not Gill. However, when Gill signed below the indorsement, he made it his own indorsement. The court concluded that Gill had the legal power and authority to verbally instruct that the entire proceeds be deposited into his account. The court stated that as long as the indorsement was his own, whether it was restrictive or conditional, Gill had the power to ignore it, strike it out or give contrary instructions.
The court further concluded that the bank acted properly when it followed the verbal instructions given by Gill to the teller and the written instructions on his deposit slip to deposit the entire proceeds into Gill's account. Consequently, the court gave summary judgment in favor of the bank. It pretermitted consideration of the bank's exceptions. Judgment was signed March 24, 2003.
Wisner appeals.

LAW
Our review of a grant or denial of a motion for summary judgment is de novo. Independent Fire Insurance Company v. Sunbeam Corporation, 1999-2181 (La.2/29/00), 755 So.2d 226. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Sunset Realty, Inc. v. Antonini, 36,788 (La. App.2d Cir.1/29/03), 836 So.2d 1173. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B).

DISCUSSION
Wisner contends that the trial court erred in holding that the bank could disregard what Wisner characterizes as a special and restrictive indorsement on the back of the check. It claims that under La. R.S. 10:3-206, the amount paid by the bank had to be "applied consistently with" the indorsement and that the bank's failure to comply with the indorsement made it liable to Wisner. According to Wisner, Gill was not entitled to deposit the amount due to Wisner by virtue of his own special indorsement and the bank converted the check under La. R.S. 10:3-420[3] by crediting the full amount to Gill's account.
The bank argues that the indorsement was conditional and thus could be ignored pursuant to La. R.S. 10:3-206(b). It also asserts that nothing on the check indicated that the indorsement was written by someone other than Gill. Since the check was made payable to Gill, the indorsement was *1115 not necessary to his title and could be ignored, struck out or simply waived. The bank also claims that Wisner had no ownership interest in the check, did not receive delivery of the check, and had no claim for conversion under La. R.S. 10:3-420.
We agree with the appellee that the true problem in this case is the failure of the government to issue the check jointly to Gill and Wisner as co-payees. Had the government done so, there would be no question as to Wisner's entitlement to a portion of the proceeds from the check.
Although the writing on the back of the check is referred to as an indorsement, we note that, standing alone, it does not truly conform to the definition found in La. R.S. 10:3-204.[4] This paragraph was placed on the back of the check by the government as the maker or drawer of the check. Consequently, the appellee argues that Gill as sole payee could waive, ignore or strike out the language.
Although the Louisiana jurisprudence contains no similar case dealing with the Uniform Commercial Code, we may look to other jurisdictions for guidance. Quantum Supplies Inc. v. Bank of the South, 544 So.2d 1 (La.App. 1st Cir.1989), writ denied, 550 So.2d 653 (La.1989); Sonnier v. Boudreaux, 95-2127 (La.App. 1st Cir.5/10/96), 673 So.2d 713.
In Silver Creations, Ltd. v. United Parcel Service, 133 N.J.Super. 543, 337 A.2d 641 (1975), the drawer of a check placed instructions on the backs of several checks (which were not post-dated) that the instruments not be deposited until a specific future date. However, the payee presented some of the checks prior to the date specified on the back. The court found that the drawer did not have the capacity to indorse the instruments; as a result the typed instructions on the backs of the checks could not be indorsements. Instead, they were "merely requests to plaintiff who may or may not comply at its own pleasure. The instructions are neither binding on plaintiff nor the subsequent holders." In other words, the payee could ignore the instructions.
In the instant case, the payee did precisely that. Gill ignored the writing on the back of the check and instructed the teller at the defendant bank to do the same through verbal and written instructions.
Wisner argues that by affixing his signature under the writing on the back of the check, Gill made it his own indorsement. Furthermore, it asserts that it was a restrictive indorsement, not a conditional one which could be disregarded pursuant to La. R.S. 10:3-206. Wisner relies upon the provisions of La. R.S. 10:3-206 for the proposition that the check had a restrictive indorsement and that the bank converted the check because it failed to apply the amount it paid consistently with the indorsement. However, Comment 3 to La. R.S. 10:3-206 states, in pertinent part:
This Article does not displace the law of waiver as it may apply to restrictive *1116 indorsements. The circumstances under which a restrictive indorsement may be waived by the person who made it is not determined by this Article.
Not all jurisdictions recognize a doctrine of waiver of restrictive indorsements. See Rutherford v. Darwin, 95 N.M. 340, 622 P.2d 245 (App.1980), wherein the court rejected that doctrine after expressing concern that it could be used as a means of concealing embezzlement or misappropriation.
In the Rutherford case, Darwin was a general partner of two entities with full authority to manage funds of both entities with his signature alone. He took money from one entity, Rancho Village Partners, in the form of a money order made payable to that entity and indorsed it to be deposited in that entity's account. However, he deposited the money into the account of the other entity, The Settlement, Ltd., with a deposit slip pre-printed for the account of The Settlement. The teller deposited the funds according to the deposit slip, not the indorsement. The bank argued that Darwin "waived" the restrictive indorsement.
The court held that New Mexico did not recognize any doctrine of the waiver of restrictive indorsements. It noted that such a doctrine of waiver was recognized in other jurisdictions under the Uniform Negotiable Instruments Law (NIL). However, the court was unaware of any case recognizing it since the UCC superseded the NIL. It held that the codification of the law of restrictive indorsements contained in the UCC was sufficiently comprehensive and detailed to exclude common law exceptions which were not mentioned. The court further stated:
The presence of an uncancelled restrictive endorsement on a negotiable instrument creates the legitimate expectation that it was negotiated in accordance with the restriction, and thus it would, at least in some cases, tend to conceal embezzlement or misappropriation to allow such endorsements to be waived without being physically struck from the instrument.
....
The circumstances of the transaction cry out for attention on the part of the bank. We hold, as a matter of law, that the bank had a duty to refuse to deposit the money to the account of The Settlement. The money order was restrictively endorsed to the account of an entity entirely different from that named, on the accompanying deposit slip. The trial court observed that, particularly in light of the sum involved, the bank had an obligation to be sure that the money went into the proper account.
In its discussion, the court referred to the official comment to Sec. 3-206 as "persuasive authority of the meaning of the section" and stated that it gave further indication that "the section was not to be encumbered with the common law accessories of the NIL" when it described the changes made by the new section as "completely revised" from the prior NIL provision. However, New Mexico has since amended this article and its comments, as has Louisiana, and the comments now state: "This Article does not displace the law of waiver as it may apply to restrictive indorsements. The circumstances under which a restrictive indorsement may be waived by the person who made it is not determined by this Article."
In his dissent, Judge Sutin found that "the deposit slip was equivalent to a line drawn through the restrictive endorsement. The restrictive endorsement was cancelled." He also cited New Mexico's version of UCC 1-103 that stated that unless displaced by particular provisions of the UCC, the principles of law and equity *1117 would be supplementary. He asserted that waiver of restrictive indorsements was not displaced and was a supplement to the UCC recognized in New Mexico.
In O'Petro Energy Corporation v. Canadian State Bank, 837 P.2d 1391 (Okla. 1992), a corporation president indorsed a check to the corporation "for deposit only" and had the bank deposit the proceeds in his personal account. The Supreme Court of Oklahoma held that, under these circumstances, the bank could not be held liable for violating the provisions of Oklahoma's version of 3-206 if the president had authority to indorse the check and deposit it in any account he chose, and if the bank acted in a commercially reasonable manner in inquiring into that authority. The court stated that the accompanying deposit slip cancelled the indorsement out the same as if the president had drawn a line through the restriction and further negotiated it with his personal indorsement.
In Society National Bank v. Security Federal Savings and Loan, 71 Ohio St.3d 321, 643 N.E.2d 1090 (1994), Vedrody was the president and controlling shareholder of both Microtek and NovelTree; as such he was authorized to indorse checks for both companies. He indorsed a check to Microtek "for deposit only" and signed his name. However, he presented the check to the bank with a deposit slip for Novel-Tree upon which he had written instructions to give him $1,000 in cash and credit the rest to NovelTree's account. The teller did as instructed by the deposit slip. A creditor of Microtek, as its successor in interest, sued the bank for applying the check inconsistently with its restrictive indorsement.
The Ohio Supreme Court affirmed the appellate court decision that found the bank wrongfully paid the funds to a non-Microtek account inconsistently with the "for deposit only" indorsement. It held that the bank acted inconsistently with the indorsement by cashing or crediting the amount of the check to any account other than one held in the name of the payee. (Although it applied the former law, the court stated that it was consistent with what was then the newly enacted law in Ohio; the new law is comparable to the present Louisiana version of La. R.S. 10:3-206.) The court stated:
The issue is whether [Vedrody's] act of preparing a deposit slip on behalf of NovelTree instructing payment of the check in a manner contrary to the indorsement he had previously made on behalf of Microtek was an act sufficient to accomplish a modification of that indorsement. We find no statutory authority for the proposition that a depositary bank may disregard a restrictive indorsement based on the content of a deposit slip which is facially inconsistent with that restrictive endorsement. On the contrary, the law compels the opposite conclusion. A deposit slip, which is neither attached to nor incorporated into the check itself, does not constitute an allonge, nor can a writing contained on a deposit slip serve as a restrictive indorsement, or a modification of a restrictive indorsement.
In dissent, Justice Wright found that, although the funds were applied inconsistently with the restrictive indorsement, the bank had a valid defense. He utilized the Ohio version of UCC 1-103; it stated that, except where displaced by the UCC provisions adopted in Ohio, the principles of law and equity supplemented those provisions. He wrote:
[T]he common-law principles relating to estoppel, waiver, and agency supplement the statutory provisions concerning restrictive indorsements. If the defenses of waiver and estoppel were not available, *1118 I could place a "for deposit only" restrictive indorsement upon a check payable to me, take the check to my bank, instruct the teller that I have changed my mind and want cash, and then sue the bank in conversion if it gives me the cash instead of depositing the check proceeds into one of my accounts.
In his dissent in Cairo Cooperative Exchange v. First National Bank of Cunningham[5], 228 Kan. 613, 620, 620 P.2d 805, 810-811 (1980), modified on rehearing, 229 Kan. 184, 624 P.2d 420 (1981), Justice McFarland expressed his concerns in a similar vein:
Certainly, when a person places a restrictive indorsement on a check, directing the bank to deposit the check in the person's bank account, it is an instruction to the bank to do just that. K.S.A. 84-3-206. Simple, common sense reaches that result, with or without a code provision. But the Code does not state that failure to follow the instruction results in absolute liability to the bank in all circumstances.
Under the rationale of the majority opinion, if I take a check payable to me, with my restrictive "for deposit only" indorsement to the bank I regularly patronize, and advise the teller I have changed my mind and want cash, then I must be paid twice for my check if the bank follows my instructions. This is not and cannot be the law.
He likewise referred to the Kansas version of UCC 1-103 in support of his position.
An important difference distinguishes the cases cited above from the one before us now. In the cases cited above, the payee and restrictive indorsement were generally consistent; the inconsistency arose from the verbal instruction or deposit slip. In the case at bar, the payee and the indorsement were inconsistent while the verbal and written deposit order were consistent with the payee.
La. R.S. 10:1-103 states that "[u]nless displaced by particular provisions of this Title, the other laws of Louisiana shall apply." According to the Comment to La. R.S. 10:1-103, the purpose of this provision is to make clear that if a situation is not explicitly covered by the UCC provisions, the rest of Louisiana law applies without limitation.
In two cases arising under pre-UCC law, Louisiana recognized that indorsements could be ignored or struck out. In Succession of Leroy, 157 La. 1077, 103 So. 328 (1925), the Louisiana Supreme Court held that the holder of a check could erase or strike out a restrictive indorsement on a check that was not necessary to the holder's title. In National Acceptance Company of America v. Wallace, 194 So.2d 194 (La.App. 2d Cir.1967), writs refused, 250 La. 467, 196 So.2d 533 (1967), and 250 La. 470, 196 So.2d 534 (La.1967), the court stated that an erroneous indorsement could be ignored and even struck out as unnecessary to the plaintiff's title.
Like the trial court, we find that when Gill affixed his signature under the writing on the back of the check, he made it his own indorsement. We further find that the indorsement was restrictive, not conditional. As Gill's own restrictive indorsement, he could waive it and direct that the check, upon which he was designated as the sole payee, be deposited in his account in its entirety.
*1119 Due to our resolution of this issue, we pretermit the issue of Wisner's standing to bring the instant suit.

CONCLUSION
The trial court judgment granting summary judgment in favor of Richland State Bank is affirmed. Costs of this appeal are assessed against the appellant, Wisner Elevator Company, Inc.
AFFIRMED.
NOTES
[1] La. R.S. 10:3-206(c)(2) provides:

(c) If an instrument bears an indorsement
(1) described in R.S. 10:4-201(b), or (ii) in blank or to a particular bank using the words "for deposit," "for collection," or other words indicating a purpose of having the instrument collected by a bank for the indorser or for a particular account, the following rules apply:
(2) A depositary bank that purchases the instrument or takes it for collection when so indorsed converts the instrument unless the amount paid by the bank with respect to the instrument is received by the indorser or applied consistently with the indorsement.
[2] The provisions of La. R.S. 10:3-206(b) are:

(b) An indorsement stating a condition to the right of the indorsee to receive payment does not affect the right of the indorsee to enforce the instrument. A person paying the instrument or taking it for value or collection may disregard the condition, and the rights and liabilities of that person are not affected by whether the condition has been fulfilled.
[3] In pertinent part, La. R.S. 10:3-420 states:

(a) An instrument is converted when
(i) a drawee to whom it is delivered for acceptance refuses to return it on demand; or
(ii) any person to whom it is delivered for payment refuses on demand either to pay or to return it; or
(iii) it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.
(b) An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or co-payee or (iii) by the drawer.
[4] La.R.S. 10:3-204(a) states:

"Indorsement" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring indorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.
[5] In Cairo, supra, the majority opinion held that good practice dictated that an agreement to vary a restrictive indorsement had to be in writing and noted on the instrument by a person with proper authority.