KARAT GOLD IMPORTS, INC., Appellant,

v.

UNITED PARCEL SERVICE, INC., et al., Appellees.

[Cite as *Karat Gold Imports, Inc. v. United Parcel Service, Inc.* (1989), 62 Ohio App.3d 604.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 55827.

Decided Sept. 5, 1989.

*Carr, Feneli & Carbone Co., L.P.A., Leonard Carr* and *Mark R. Wagner,* for appellant.

*Squire, Sanders & Dempsey* and *Kimberly Oreh; Schnader, Harrison, Segal & Lewis* and *Stephen D. Brown,* for appellees.

---

SAUL G. STILLMAN, Judge.

Karat Gold Imports, Inc. ("Karat Gold") appeals from the judgment of the trial court which directed a verdict for defendants United Parcel Services, Inc. and United Parcel Service General Services Company (collectively "U.P.S.") in Karat Gold's suit for breach of contract and other causes of action. Karat Gold assigns five errors for our review, but, for the reasons set forth below, these assignments of error are overruled and the judgment of the trial court is affirmed.

## I

Karat Gold is a jewelry wholesaler which sells to retail jewelry stores across the country. Sometime in early 1986, Karat Gold began to ship merchandise to its retail customers via U.P.S. carrier services. As part of this carrier's service presentation to Karat Gold, Karat Gold's owner, Cindy Valerino, and then national sales manager, Sandra Kuzma, were informed of a collect-on-delivery ("C.O.D.") shipment option, and were further informed that they could instruct U.P.S. to accept "cash only" on such deliveries.

In July 1986, some months after the U.P.S. presentation, Karat Gold received a telephone order for jewelry totalling $23,025.39 from an individual who identified himself as Paul Ryan of Van Nuys, California, who explained that he needed the jewelry as soon as possible for the opening of his new jewelry store. As Karat Gold had never done business with Ryan before, Kuzma asked him for business references. Ryan explained that he had none, as he was beginning a new venture. Rather than check Ryan's personal credit references, Karat Gold opted to ship the merchandise to Ryan using the C.O.D., "cash only" shipment option.

U.P.S. subsequently delivered the jewelry to Ryan in exchange for Ryan's cashier's check in the amount of $23,025.39, purportedly drawn on First Interstate Bank of California. U.P.S. subsequently remitted the cashier's check to Karat Gold, and Karat Gold in turn deposited it into its account at National City Bank in Cleveland. Karat Gold's account was then credited with the amount of the cashier's check, but, approximately one week later, National City Bank learned that the instrument was counterfeit and $23,025.39 was then debited from the account.

Thereafter, on December 22, 1986, Karat Gold filed a five-count complaint against U.P.S. alleging, essentially, that U.P.S. breached its obligation to collect "cash only" on the delivery to Ryan by collecting the counterfeit cashier's check. U.P.S. filed an answer denying that it had breached any duty owed to Karat Gold in this transaction, and the matter proceeded to trial on April 27, 1988.

For its key evidence, Karat Gold presented the testimony of Daneen Maderas, the U.P.S. customer service representative who gave the service presentation to Karat Gold in 1986, Valerino and Kuzma, Karat Gold employee Jill Varga, and David Pavia and Steve Hrezik, both U.P.S. employees.

Maderas, who was called by Karat Gold upon cross-examination, testified that during her presentation to Karat Gold, she explained basic shipping instructions, insurance, and packaging. With respect to her instructions regarding the C.O.D. shipments at issue here, Maderas testified that in her typical presentation, she explains that U.P.S. will collect payment for a C.O.D.

order in any form including personal checks. If, however, the shipping customer indicates that U.P.S. is to collect "cash only" on a C.O.D. order, U.P.S. will collect the amount due in currency, a certified check, a cashier's check, or a money order.

However, Maderas could not recall whether she specifically informed Valerino and Kuzma that U.P.S. deemed these instruments to be cash, and she further acknowledged that none of the documents left with Karat Gold indicated that U.P.S. defined these instruments as cash. Nonetheless, Maderas testified that in the shipping industry as a whole, cash includes cashier's checks, certified checks, and money orders, as well as currency.

Maderas next authenticated several pages from the U.P.S. Customer Service Information Guide which U.P.S. provides to its customer service personnel to assist them in dealing with specific problems. Passages B–38 to B–40 of this document provide:

"Should we accept certified checks, cashier's checks or money orders in payment of 'cash only' C.O.D.'s?

"Yes. It is general practice in the transportation industry that certified checks, cashier's checks and money orders are accepted in lieu of cash and we will follow this practice.

"Are we responsible to our customers for bad checks returned to them as uncollectible?

"No. We are not responsible except when a C.O.D. tag has been marked 'Cash Only.' We will, however, assist the customer in trying to collect on these checks.

"If a *regular check* is collected in error by UPS on a C.O.D. package marked 'Cash Only' or 'Certified Check Only,' and the shipper deposits that check without protesting the form of the payment, is UPS liable if the check is uncollectible?

"No. We are not liable once the shipper deposits the check because, legally, he has ratified our acceptance of that check. However, we should consider that our error caused the shipper not to receive proper payment. If the shipper has used reasonable prudence in bringing an insufficient funds check to our attention promptly, we should make him whole. First by attempting to collect the proper payment from the consignee, and if not successful, by paying the shipper with our check." (Emphasis added.)

Valerino and Kuzma next established that Ryan contacted Karat Gold on July 2, 1986, seeking overnight delivery of a large jewelry order. As Ryan had no business references, the following precautions were taken in connection with shipping the order. First, Valerino asked the Van Nuys police to

check the address Ryan had given, in order to confirm that a jewelry store was at that location. They refused to do so, however. Next, Valerino decided to ship the jewelry using the C.O.D., "cash only" instruction. Finally, after the package had been mailed, Kuzma called U.P.S. and instructed it to collect only currency for the delivery. Kuzma testified that in response to this additional instruction, she was told that the "cash only" indication would ensure this result. Valerino and Kuzma further testified that they expected U.P.S. to collect currency from Ryan and to then remit the amount collected to Karat Gold with a check drawn on U.P.S.'s own account as this procedure was outlined in the service explanation Maderas left with them.

Cross-examination of these witnesses revealed that Karat Gold could have checked Ryan's personal credit references and could have required prepayment before shipping the jewelry, but did not do so as it feared it would lose the sale if it did not ship overnight as requested. Cross-examination further revealed that approximately one month before the shipment at issue, Karat Gold had accepted a check drawn on a credit union in collection of a C.O.D., "cash only" shipment, and did not protest U.P.S.'s collection of this instrument or complain that it had deviated from the "cash only" instruction.

Jill Varga testified that after U.P.S. remitted Ryan's check to Karat Gold, she stamped it "for deposit only," and that she probably did so at the instruction of one of Karat Gold's co-owners.

Finally, Pavia, an auditor of U.P.S. drivers who has been with the carrier for fourteen years, testified that to him, "cash" means currency or federal reserve notes. Hrezik, an employee in the delivery information-loss prevention department of U.P.S. with twenty-four years of experience with the carrier, likewise admitted that he had testified to the same effect when his deposition was taken earlier in the proceedings.

At the close of its evidence, Karat Gold moved to amend its complaint to include a sixth cause of action for fraud. U.P.S. in turn moved for a directed verdict, arguing that even if U.P.S. had breached the "cash only" instruction, Karat Gold ratified the breach by depositing the cashier's check into its account without protest. Both motions were denied and U.P.S. proceeded with its case.

Gregory McDonald, a customer service manager for U.P.S., provided the key defense testimony. McDonald testified that the "cash only" designation authorizes U.P.S. to collect currency, cashier's checks, certified checks and money orders. Essentially, this designation prohibits collection of only personal checks and business checks. McDonald further testified that the service explanation given to shipping customers which informs the customers that they will receive a check drawn on a U.P.S. account for amounts U.P.S.

collects in "cash," applies only when U.P.S. collects currency on a delivery. If, however, a cashier's check, certified check or money order is collected on a "cash only" delivery, then the instrument itself is transmitted directly to the shipping customer.

At the close of all of the evidence, both parties moved for a directed verdict. After considering all of the evidence, and the law as set forth in the parties' trial briefs, the court directed a verdict for U.P.S. as it determined that "cash" includes cashier's checks. Thus, the court concluded that the "cash only" instruction was not breached by collection of a cashier's check in this instance. The court further concluded that even if the "cash only" instruction were breached, Karat Gold had ratified this breach by depositing the cashier's check into its account without protesting the carrier's collection of this instrument until it was discovered to be counterfeit. Thereafter, Karat Gold perfected its appeal to this court.

## II

For its first assignment of error, Karat Gold argues that the trial court improperly concluded that the C.O.D. "cash only" instruction authorized U.P.S. to collect a counterfeit cashier's check. This claim lacks merit.

█ Initially, we note that the issue before this court is not whether a *counterfeit* cashier's check may constitute "cash," but is instead whether a cashier's check may constitute "cash." Karat Gold did not argue at trial that Ryan's cashier's check was patently counterfeit or that U.P.S. knew or should have known that it was counterfeit, but rather argued that the carrier's collection of anything other than currency violated the "cash only" instruction. This is the question we must now determine. Accord *Foran v. Fisher Foods, Inc.* (1985), 17 Ohio St.3d 193, 194, 17 OBR 430, 431, 478 N.E.2d 998, 999 (arguments which have not been raised in proceedings before the lower court cannot be considered on appeal). In short, from the manner in which Karat Gold presented its case, U.P.S.'s breach, if any, occurred at the moment it accepted Ryan's cashier's check, not when this instrument was later discovered to be counterfeit. See *Compuknit Industries, Inc. v. Mercury Motors Express, Inc.* (1972), 72 Misc.2d 55, 337 N.Y.S.2d 918 (carrier did not breach contract instructing it to accept recipient's check even though check was later dishonored); cf. *The Video Station v. Frey's Motor Express, Inc.* (1983), 188 N.J.Super. 494, 457 A.2d 1217 (where carrier should have known that check was forged, it was negligent in accepting check).

█ Moreover, for the reasons set forth below, we conclude that U.P.S. did not breach the "cash only" instruction when it accepted Ryan's cashier's check.

In a commercial transaction, the meaning of the parties' agreement is to be determined by the language used by the parties, and the parties' actions, read and interpreted in light of their course of previous dealings and usage of trade. R.C. 1301.11 (Official Comment to U.C.C. Section 1–205, the provision upon which R.C. 1301.11 is based). See, also, White & Summers, Uniform Commercial Code (1980) 98, Section 3–3.

In this matter, the language of the parties' agreement, "cash only," is the focus of their dispute, and the parties' course of previous dealings and trade usage must be examined in order to interpret that language.

### A. *Usage of Trade*

In accordance with Official Comments 4 and 5 of U.C.C. Section 1–205, *i.e.*, R.C. 1301.11, the usage of trade influences interpretation of the parties' agreement so that an agreement will be found to mean " * * * what it may fairly be expected to mean to parties involved in the particular commercial transaction in a given locality or in a given vocation or trade."

In this instance, the trade meaning of "cash only" is less than clear. That is, the U.P.S. personnel from this locality attributed contradictory meanings to the term as Maderas stated that "cash" means certain negotiable instruments as well as currency, whereas Pavia and Hrezik stated that, to them, the term meant currency exclusively. Further, "cash only" has been inconsistently interpreted in shipping cases from other jurisdictions.[1] Compare *Streiff Jewelry Co. v. United Parcel Service, Inc.* (S.D.Fla.1987), 670 F.Supp. 341, vacated at parties' request pursuant to a settlement agreement (S.D.Fla.1988), 679 F.Supp. 7 ("cash only" instruction is not satisfied by carrier's collection of a cashier's check); *Joseph Mogul, Inc. v. C. Lewis Lavine, Inc.* (1927), 220 App.Div. 287, 221 N.Y.S. 391, reversed on other grounds (1928), 247 N.Y. 20, 159 N.E. 708 (carrier breached duty to collect cash by collecting a certified check discovered to be a forgery); with *Leenet Jewelry Corp. v. United Parcel Service, Inc.* (Civ.Ct.N.Y.), Index No. 64051/86, Lane, J. (carrier did not breach its duty to collect "cash only" when it collected a certified check which was later found to be counterfeit).

### B. *Course of Dealing/Course of Performance*

As defined in Official Comment 2 to U.C.C. Section 1–205, *i.e.*, R.C. 1301.11, course of dealing " * * * is restricted, literally, to a sequence of conduct between the parties previous to the agreement. However, the provisions of the Act on course of performance make it clear that a sequence of conduct

---

1. The precise meaning of "cash only" has not been previously decided in this state.

after or under the agreement may have equivalent meaning. (Section 2–208 [R.C. 1302.11].)"

In this case, there was some evidence that Valerino expected U.P.S. to deposit Ryan's cashier's check into its account and then remit its own check for this amount to Karat Gold. The parties' sequence of conduct, however, failed to demonstrate that this remittance procedure would be followed if U.P.S. collected anything other than currency on its C.O.D. shipments. Moreover, the parties' sequence of conduct previous to this transaction indicates that U.P.S.'s collection of a check drawn on a savings institution would indeed satisfy the "cash only" instruction, as Karat Gold did not object when U.P.S. collected a check drawn on a credit union on a "cash only" shipment, just one month prior to the shipment at issue.

In addition, Karat Gold's course of performance of the shipment at issue further demonstrates that U.P.S.'s collection of the cashier's check fairly complied with the "cash only" instruction, as Karat Gold did not object to the carrier's collection of this instrument until it was subsequently dishonored.

Accordingly, the parties' course of dealings and course of performance both demonstrate that U.P.S. could properly collect a cashier's check on a "cash only" C.O.D. shipment. In light of this, we conclude that reasonable minds could only conclude that these parties contemplated that U.P.S. could collect a cashier's check in this instance, and we hold that the trial court properly directed a verdict for U.P.S. on this basis. Accord *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph four of the syllabus.

### III

For their second assignment of error, Karat Gold argues that the trial court erred in concluding that it had ratified any breach of the "cash only" instruction by depositing Ryan's cashier's check into its account without protest. Specifically, Karat Gold contends that ratification is not supported by the facts because Karat Gold ultimately received no benefit from the ratification, and, at the time the instrument was deposited, the principals of Karat Gold did not know that it was worthless or that the "cash only" instruction had not been followed. Moreover, Karat Gold argues that precedent from other jurisdictions bars application of the doctrine of ratification in this instance. These claims are without merit.

▮ Generally speaking, ratification will be found where the principal, with full knowledge of the facts, conducts himself in a way which manifests his intention to approve an earlier act performed by his agent which did not bind him. See *Meyer v. Klensch* (1961), 114 Ohio App. 4, 6, 18 O.O.2d 261, 262, 175

N.E.2d 870, 871. Thus, it is not required that the principal ultimately benefit from this conduct in order to establish ratification.

■ Where the facts are uncontested and establish each element, ratification is a question of law. See *Mountain States Waterbed Distributors, Inc. v. O.N.C. Freight Systems Corp.* (1980), 44 Colo.App. 433, 614 P.2d 906; see, also, Annotation (1951), 15 A.L.R.2d 807, 813.

■ In actions such as this where a shipping customer sues his carrier for allegedly collecting an unauthorized form of payment, the vast majority of jurisdictions agrees that ratification will be found where the shipping customer unconditionally deposits this unauthorized form of payment into its account, knowing that it deviates from the form of payment specified in the shipping contract. *Mountain States Waterbed Distributors, Inc., supra; Bond Rubber Corp. v. Oates Bros.* (1949), 136 Conn. 248, 70 A.2d 115; *Silver Creations, Ltd. v. United Parcel Service* (1975), 133 N.J.Super. 543, 337 A.2d 641; *Rathbun v. Citizens' Steamboat Co.* (1879), 76 N.Y. 376; *American Machinery & Motor Co. v. United Parcel Service* (1976), 87 Misc.2d 42, 383 N.Y.S.2d 1010; *Compuknit Industries, Inc., supra; Chaning v. Riddle Aviation Co.* (Mun.Ct.1953), 203 Misc. 844; 119 N.Y.S.2d 552.

That is, the vast majority of jurisdictions has determined that the requirement of "full knowledge of the facts" was satisfied where the evidence showed that the shipping customer was aware that the carrier had collected a variant form of payment; the carrier was not required to prove that the shipping customer knew that this variant form of payment was worthless when accepted.[2]

The rationale underlying these cases is that the shipping customer has full awareness of the carrier's purported breach at the time it receives the non-complying form of payment. By depositing that form of payment without protest, the customer has excused the noncompliance and must therefore bear the risk that this form of payment may subsequently be dishonored.

We find this rationale persuasive, and, concomitantly, we hold that the trial court correctly determined that Karat Gold had ratified any breach in the "cash only" delivery instruction by depositing Ryan's cashier's check without protest.

We further reject Karat Gold's argument that its principals did not know that the "cash only" instruction had been breached when the cashier's check

---

2. A contrary view was espoused in *Streiff Jewelry Co. v. United Parcel Service, Inc., supra,* which held that there could be no ratification where the shipper was unaware that by depositing the non-conforming method of payment, he would lose any future contractual rights against the carrier.

was deposited, as that claim is not supported by the record. That is, while Jill Varga testified that she prepared the deposit slip for the cashier's check and stamped it "for deposit only," she stated that she probably did so at the request of one of Karat Gold's co-owners, and further testified that a second Karat Gold associate actually deposited the check into the Karat Gold account. Moreover, depositions filed with the court prior to trial suggest the personnel in the Karat Gold credit office knew that a cashier's check was received and deposited on Ryan's order, yet put forth no protest until the check was dishonored eight days later.

Finally, as to Karat Gold's argument that pursuant to *Joseph Mogul, Inc. v. C. Lewis Lavine, Inc., supra,* the carrier's remittance of a forged cashier's check is a nullity which cannot be ratified, we note that the great weight of authority is to the contrary, as we set forth previously.

For the foregoing reasons, we cannot conclude that the trial court erred in directing a verdict for U.P.S. in this action by application of the doctrine of ratification, and we hereby overrule Karat Gold's second assignment of error.

## IV

Karat Gold next contends that the trial court abused its discretion when it denied Karat Gold's motion for leave to amend its complaint to include a count for fraud against U.P.S. We disagree.

This court has previously held that where a party is not seeking to remedy an apparent oversight or omission in the original complaint, but instead sets forth a new cause of action resulting in prejudice to the defendant, the trial court does not abuse its discretion in overruling a motion for leave to amend. *Bauer v. Mulford* (Mar. 3, 1988), Cuyahoga App. No. 53420, unreported, 1988 WL 26258.

In this case, Karat Gold did not attempt to remedy an oversight or omission in its earlier pleadings, but instead attempted to set forth a new cause of action on the eve of trial, after the action had been pending for two years. Accordingly, we cannot hold that the trial court abused its discretion in denying Karat Gold leave to amend. Moreover, we note that Karat Gold presented insufficient operative facts in support of the new allegations of fraud, as there was no evidence that a U.P.S. representative made any false statement with intent to deceive Karat Gold's principals. Accord *Solowitch v. Bennett* (1982), 8 Ohio App.3d 115, 116–117, 8 OBR 169, 170–172, 456 N.E.2d 562, 563–565.

## V

Karat Gold next argues that the trial court erred in excluding Karat Gold's proposed exhibits 7A and 7B, a U.P.S. explanation promulgated in January 1988 which specifically explains that various negotiable instruments are collectible on "cash only" shipments. Essentially, Karat Gold contends that these exhibits should have been admitted because they are relevant to the parties' intent at the time of the shipment at issue here.

A trial court's decision to exclude evidence from trial will not be reversed unless there has been a clear and prejudicial abuse of discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493.

In this case, we fail to see how a document promulgated one and one-half years after the incident could be illuminative of the parties' intent at the time of the incident.

Accordingly, we cannot agree that the trial court abused its discretion in excluding the exhibits, and we overrule this assignment of error.

## VI

For its final assignment of error, Karat Gold claims that the trial court erred in directing a verdict for U.P.S. because "the trial court felt it was compelled * * * to rule in favor of one motion or another" after both parties had moved for a directed verdict.

The record fails to disclose any evidence that the trial court was "compelled" to grant U.P.S.'s motion, however. Rather, after both parties had presented their evidence, it became clear that the key facts were not in dispute, and all that remained was the court's determination of the legal significance of those facts. That is, it was undisputed that U.P.S. collected a cashier's check on a "cash only" delivery and that Karat Gold did not protest receipt of this instrument until it was discovered to be counterfeit. Thus, the trial court properly determined the legal effect of these facts. Accord *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68, 23 O.O.3d 115, 116, 430 N.E.2d 935, 937.

The fifth assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

FRANCIS E. SWEENEY, P.J., and MITROVICH, J., concur.

SAUL G. STILLMAN, J., retired, of the Eighth Appellate District, sitting by assignment.

PAUL H. MITROVICH, J., of the Court of Common Pleas of Lake County, sitting by assignment.