**CLEVELAND POLICE PATROLMEN'S ASSOCIATION, Appellee,**

v.

**CITY OF CLEVELAND, Appellant.**

[Cite as *Cleveland Police Patrolmen's Assn. v. Cleveland* (1995), 107 Ohio App.3d 248.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67896.

Decided Nov. 6, 1995.

*Marshall & D'Angelo* and *Patrick A. D'Angelo,* for appellee.

*Duvin, Cahn & Hutton, Frank W. Buck* and *Robert M. Wolff; Squire, Sanders & Dempsey* and *William J. Evans; McDonald, Hopkins, Burke & Haber* and *Eric E. Kinder,* for appellant.

NAHRA, Judge.

Defendant-appellant city of Cleveland (the "city") appeals from an order of the Cuyahoga County Court of Common Pleas which vacated an arbitration award in the city's favor. The arbitrator had denied plaintiff-appellee Cleveland Police Patrolmen's Association's (the "union's") grievance, filed when disciplinary action was taken by the city against two of the union's members. The union then appealed the arbitrator's decision to the trial court, which determined the award was improper.

The instant action results from an incident which received a great deal of notoriety. On the night of December 28, 1992, two Cleveland police officers, Michael Tankersley and Jeffrey Gibson, while on patrol on the east side of Cleveland, spotted a car which had been reported stolen. When they approached it, the driver, later identified as Michael Pipkins and whom Tankersley recognized as a convicted felon, fled the scene. The officers detained the passenger of the car, Rubin Smith, and requested he help them find Pipkins.

After the car was towed away, Smith accompanied the officers. Tankersley and Smith soon observed Pipkins standing on a nearby corner with a companion. The officers then attempted to arrest Pipkins.

When he was informed of the officers' intention, Pipkins tried to flee. The officers quickly grabbed his arms but Pipkins did not submit; rather, a struggle ensued. The officers wrestled Pipkins to the ground and tried to subdue him. Tankersley was on Pipkins's shoulders while Gibson was on his legs. Although the officers managed to handcuff one of Pipkins's wrists, he continued to resist

and yell. At that point, Tankersley put all the pressure he could muster to Pipkins's neck and face. After about a minute, Pipkins ceased struggling. The officers were then able to place the other handcuff on Pipkins as a back-up police car arrived at the scene.

The newly arrived officers, McHugh and Sandoval, saw Tankersley and Gibson rise, pull Pipkins up, and take their suspect over to their patrol car. McHugh opened its door as the three approached. Tankersley and Gibson pushed Pipkins into the rear passenger area of their patrol car. Pipkins's head struck against the door frame; however, he did not react. He simply fell face down onto the back seat.

Pipkins's head was in Smith's lap while the officers left the area of the incident. During this time, Tankersley, Gibson and Smith noticed a fluid was coming from Pipkins's mouth. The officers soon thereafter decided to transfer Smith to their back-up. They stopped to do so; Pipkins did not move from his position as the transfer took place. The officers then proceeded to the Fourth District police station.

Upon their arrival, the officers pulled Pipkins out of their car, dragged him inside to a holding cell, and placed him on the floor. By this time, they had become concerned at Pipkins's lack of response, so they summoned EMS. Police Officer Deborah Miller, a former paramedic, also came to check the suspect. She found no pulse or respiration. Her immediate attempts to administer emergency first aid to Pipkins were futile.

At 10:23 p.m., Pipkins was pronounced dead on arrival at a nearby hospital. Dr. Robert Challener, Chief Deputy Coroner, subsequently determined that the cause of death was "cervical compression," or pressure on the neck. Challener concluded that the pressure applied by Tankersley to Pipkins's neck area stimulated a condition known as the "carotid sinus reflex," wherein the carotid artery that supplies blood to the brain ceases to function and stops the heart. The fluid later observed coming from Pipkins's mouth as he lay in the patrol car was consistent with pulmonary edema, which occurs at the onset of death.

The city conducted an investigation into Pipkins's death. Tankersley and Gibson were eventually charged with violating police department regulations.[1]

---

1. The officers were charged with violating the following rules as stated in the Manual of Rules and Regulations for the Conduct and Discipline of Officers and Employees of the Division of Police:

"Personnel of the Division of Police *shall not:*

"3.02 Willfully disobey any rules, regulations, general police orders or directives of the Division of Police, or any lawful orders, written or oral, issued to them by a superior officer of the Division of Police, or *neglect to perform any duty required by any rules, regulations, general police orders or directives of the Division of Police.*"

After a disciplinary hearing on the matter, the two officers received suspensions without pay of, respectively, one hundred days and forty-five days.

Thereafter, pursuant to the collective bargaining agreement in existence between the parties,[2] the union filed a grievance with the city on the officers' behalf. Once a grievance is filed, the collective bargaining agreement provides in pertinent part as follows:

"Article 22, Grievance Procedure

" * * *

"(47) Step 4. If any grievance is not satisfactorily settled * * *, the Union, and only the Union, may submit the matter to arbitration within thirty calendar days after the receipt of the answer. * * * *In the event a grievance goes to arbitration, the arbitrator shall have jurisdiction only over disputes arising out of grievances as to the * * * application [of] and/or compliance with the provisions of this Contract, including all disciplinary actions* and in reaching his decision, the arbitrator shall have no authority (1) to add or subtract from or modify in any way any of the provisions of the Contract; (2) to pass upon issues governed by law; (3) to make an award in conflict with law. The arbitrator shall issue a decision within thirty calendar days after submission of the case to him.

"The grievance Procedure set forth in this Contract *shall be the exclusive method of reviewing and settling disputes between the City and the Union—and all decisions of arbitrators shall be final, conclusive, and binding* on the City, the Union, and the members." (Emphasis added.)

---

"3.28  The following are additional grounds for disciplining personnel:
" * * *
"(f) Any other reasonable and just cause."
"5.29  Personnel of the Division of Police *shall:*
"*Give first aid to injured and sick persons and obtain proper transportation to the nearest hospital.*" (Emphasis added.)

2.  The collective bargaining agreement contains the following pertinent provisions regarding suspensions of police officers:
"Article 29  Suspensions from Duty
" * * *
"(67) The Chief of Police may suspend an officer for ten days or less for disciplinary reasons. If the Chief recommends a greater penalty, then the Director of Public Safety will hear the disciplinary charge filed against the officer and render judgment on such charge and set the disciplinary penalty, if any.
" * * *
"(69) Nothing in this Article shall be construed as precluding the preference and hearing of administrative charges alleging violation of * * * the manual of rules and regulations of the Division of Police—No arbitrator or other party shall substitute his judgment for the judgment of the Chief of Police or the Director of Public Safety in applying the provisions of this Article."

The issue of the officers' suspensions was eventually submitted to arbitration. The record reflects that the arbitrator held hearings on the matter on November 23 and 24 and December 20, 1993, and also considered briefs submitted by the parties. On March 12, 1994, the arbitrator issued his opinion and award.

In his opinion, the arbitrator reviewed the applicable police department rules and regulations, the charges filed against the officers, the grievances filed, the testimony of the witnesses at the arbitration hearings, and in considerable detail, the positions of both the union and the city on the issue of the suspensions. The arbitrator then discussed the facts upon which he had relied to arrive at his decision. At this point, the arbitrator stated:

"The Union Brief also contends that there may have been 'reverse racial discrimination' against the Grievants because they happened to be white, and the man who died was black. There in [sic] absolutely no evidence to support this."

Ultimately, the arbitrator determined that the city had "properly found just cause" for violation of police department rules, had just cause for disciplining the officers, and that the discipline imposed was reasonable. Thus, the union's grievance was denied.

The union thereafter appealed the arbitrator's award to the Cuyahoga County Court of Common Pleas "pursuant to Ohio Revised Code 2711.10(D)." As the basis for its appeal, the union stated:

"[A] review of the Arbitrator's Opinion and Award indicates a *failure to address the critical issue submitted in the grievance* which dealt with the *disparate treatment* of the officers.

"Arguments within both the pre-hearing and post-hearing briefs submitted by plaintiff contained facts and supporting case law which set forth instances of disparate treatment, *i.e.,* where similar police officer conduct received completely dissimilar discipline and in some instances, no discipline at all. *By failing to even consider this issue,* not only has *the Arbitrator violated his duty to settle disputes* arising out of grievances as stated in Article XXII of the Contract, but *he has also imperfectly executed his powers* pursuant to R.C. 2711.10(D)." (Emphasis added.)

The city filed an answer and requested a case management conference. On April 28, 1994, the trial court issued a journal entry setting the case for an oral hearing on July 12, 1994. In June 1994, the parties each submitted briefs in support of their positions to the trial court.[3]

---

3. Also included in the record on appeal, but *lacking any indication that they were actually filed with the clerk of the Cuyahoga County Court of Common Pleas,* are two large transcripts of the hearings held before the arbitrator and documents entitled as follows: "Pre-hearing Brief

On August 17, 1994, the trial court issued a "Ruling and Opinion on Plaintiff's Motion to Vacate Arbitrator Award." The trial court initially concluded that the arbitrator "considered and rejected the issue of disparate treatment as it was presented by the [union;]" thus, vacation of the award on that ground was not authorized. The trial court then further stated:

"However, R.C. § 2711.10, *in toto* also contemplates the vacating of an award if such award was procured by ' * * * undue means * * * evident partiality' which *can include a finding by the Court of an abuse of discretion by the arbitrator(s).* This Court has extensively reviewed the Award (and comments included) of the arbitrator *along with all the exhibits presented,* all the briefs and the parties' *transcripts of the proceedings.*

"This matter occurred in the shadow of the Rodney King proceedings in California.

"The decision in the arbitrator's [O]pinion and Award (included here as Exhibit A) is argumentative, circuitous, patronizing, editorial, and outside the record of the proceedings and evidence presented at the arbitration hearing." (Emphasis added.)

The trial court proceeded to review the arbitrator's decision in light of the "witness testimony" presented at the arbitration hearings. After a lengthy discussion concluding with the media attention received by the incident, the trial court made the following decision:

"This Court finds the Award of Arbitration while acting in a spirit of pacification was not based on the evidence, but was argumentative and an abuse of discretion.

"The Court orders that the arbitrator's award be *vacated and the matter is remanded* back to Arbitration for a complete and final resolution of *all* issues submitted." (Emphasis added in part.)

The city thereafter timely filed an appeal in this court of the foregoing decision. It presents the following assignments of error for review:

"Assignment of Error # 1

"Without notice to or argument from either party, the common pleas court improperly overruled all of the law in the area of labor arbitration appeals and applied an entirely new appellate standard.

"Assignment of Error # 2

---

of Grievant"; "Post Hearing Brief of Grievant"; and "Post-hearing Brief on Behalf of the City of Cleveland." See *Cleveland Police Patrolmen's Assn. v. Cleveland* (1994), 99 Ohio App.3d 63, 649 N.E.2d 1291.

"The common pleas court improperly conducted a de novo review of the record and overruled the arbitrator's factual determinations under circumstances which do not satisfy the judge's standard, let alone the one mandated by controlling, time-honored precedent.

"Assignment of Error # 3

"The common pleas court openly and improperly engaged in credibility determinations which are not allowed in any appellate setting under well-settled law.

"Assignment of Error # 4

"The common pleas court grossly distorted the record in order to obscure the controlling effect of the uncontroverted testimony of deputy chief coroner Challener who personally performed the autopsy and found 'to a reasonable degree of medical certainty' that Pipkins was unconscious from the time he was on the ground.

"Assignment of Error # 5

"Because the arbitrator's decision clearly draws its essence from the contract, there is no legitimate basis for attacking the decision."

■ Prior to considering appellant's assignments of error, this court must initially address the jurisdictional issue which was not raised by either party but which is presented by the phrasing of the trial court's order in light of *Stewart v. Midwestern Indemn. Co.* (1989), 45 Ohio St.3d 124, 543 N.E.2d 1200.

In *Stewart*, the Ohio Supreme Court determined that a trial court order which both vacates an arbitration award and orders a new arbitration proceeding is not final and appealable pursuant to R.C. 2505.02. This court has examined the facts of this case, however, and finds them inapposite to those presented to the Supreme Court in *Stewart*.

In that case, the injured wife and her husband had filed two separate *claims* for damages. The trial court found that the arbitrators had failed to consider the husband's *claim* for loss of consortium; thus, the Supreme Court stated the trial court's order reflected the fact that the decision reached by the arbitration panel was incomplete. *Id.* at 126, 543 N.E.2d at 1202.

■ In this case, the arbitrator was presented with only one *claim* to resolve, *viz.*, whether the disciplinary measure imposed on the officers was appropriate. The arbitrator's decision also fully resolved that claim in the affirmative; the trial court's subsequent order to remand the case could not change the fact that only one claim had been both presented and determined in this case. Therefore, this court finds that on the facts of this case, a final appealable order exists for consideration. See, *e.g., Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME* (1990), 69 Ohio App.3d 546, 591 N.E.2d 287;

*Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., AFSCME, AFL-CIO* (1992), 73 Ohio App.3d 392, 597 N.E.2d 533; *Cleveland Police Patrolmen's Assn. v. Cleveland* (1994), 99 Ohio App.3d 63, 649 N.E.2d 1291. Cf. *Bedford Hts. v. Fraternal Order of Police Lodge 67* (June 8, 1995), Cuyahoga App. No. 68229, unreported, 1995 WL 350116.

The question thus presented by this appeal is whether the trial court properly reviewed the arbitrator's clearly ultimate decision. The city argues that the trial court's decision was improper on several interrelated grounds. Specifically, the city argues that the trial court (1) went beyond the scope of R.C. 2711.10(D), the union's basis for appeal of the arbitration award; therefore, it lacked any legitimate basis for vacating the arbitrator's award; and (2) used an incorrect standard for review of the arbitration award, impermissibly reevaluating the credibility of the witnesses who testified at the arbitration hearing and failing to defer to the arbitrator in his evidentiary findings. A review of the record clearly substantiates the city's arguments, thus compelling reversal of the trial court's order.

It is well settled that the jurisdiction of courts in the area of arbitration and arbitration awards is limited. See, *e.g., Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186; *Warren Edn. Assn. v. Warren City Bd. of Edn.* (1985), 18 Ohio St.3d 170, 18 OBR 225, 480 N.E.2d 456. Judicial intervention in this area is statutorily restricted by R.C. 2711.09, 2711.10 and 2711.11. These sections give the court the power to vacate or modify an arbitration award only on certain enumerated grounds.

The union appealed the arbitrator's award in this case pursuant to R.C. 2711.10(D).[4] R.C. 2711.10 states:

"In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

"(A) The award was procured by *corruption, fraud, or undue means.*

"(B) There was evident *partiality or corruption* on the part of the arbitrators, or any of them.

"(C) The arbitrators were guilty of *misconduct* in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other *misbehavior* by which the rights of any party have been prejudiced.

---

4. The union presents a new argument on appeal which, since it was neither presented to the trial court nor has any basis in the record, will not be addressed by this court. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001; *Karat Gold Imports v. United Parcel Serv., Inc.* (1989), 62 Ohio App.3d 604, 577 N.E.2d 115; cf. *Beck Suppliers v. Dean Witter Reynolds* (1988), 53 Ohio App.3d 98, 558 N.E.2d 1187.

"(D) The arbitrators *exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.*" (Emphasis added.)

With regard to the basis that R.C. 2711.10 provides for vacating an arbitrator's award, this court has cautioned that judicial review of the matter must be "very narrow." *Cuyahoga Community College v. Dist. 925, Serv. Emp. Internatl. Union AFL–CIO* (1988), 42 Ohio App.3d 166, 170, 537 N.E.2d 717, 720–721.

Furthermore, the Ohio Supreme Court has declared:

"The whole purpose of arbitration would be undermined if courts had broad authority to vacate an arbitrator's award. Thus, this court has stated, '[i]t is the policy of the law to favor and encourage arbitration and *every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts.*' *Campbell v. Automatic Die & Products Co.* (1954), 162 Ohio St. 321, 329 [55 O.O. 195, 198, 123 N.E.2d 401, 405]. Indeed, this court has held that '[a] mere ambiguity in the opinion accompanying an arbitration award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for vacating the award when such award draws its essence from a collective bargaining agreement.' *Goodyear v. Local Union No. 200* (1975), 42 Ohio St.2d 516 [71 O.O.2d 509, 330 N.E.2d 703], paragraph one of the syllabus. An arbitrator's award draws its essence from a collective bargaining agreement *when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful.*" (Emphasis added.) *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 83–84, 488 N.E.2d 872, 875–876.

In this case, the union appealed the arbitrator's award in the city's favor on the basis of only R.C. 2711.10(D), contending that the arbitrator had "imperfectly executed his powers" because he had neglected to consider an issue raised, *viz.*, disparate treatment. The trial court reviewed the record "submitted" to it[5] and clearly stated in its opinion that there was no basis for the union's assertion. This action was appropriate. *Huffman v. Valletto* (1984), 15 Ohio App.3d 61, 15 OBR 90, 472 N.E.2d 740; *Ohio Council 8, AFSCME v. Cent. State Univ.* (1984), 16 Ohio App.3d 84, 16 OBR 89, 474 N.E.2d 647; cf. *Cleveland v. Assn. of Cleveland Fire Fighters* (1984), 20 Ohio App.3d 249, 20 OBR 311, 485 N.E.2d 792; *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, supra.*

---

5. See footnote 3.

■ Nevertheless, after so stating, the trial court proceeded to overturn the arbitrator's decision on a totally new basis: one neither presented to it nor *specifically* found in the other portions of R.C. 2711.10. Rather, the trial court essentially stated it found justification for its action simply in the "gist" of that statute.

In this manner, the trial court took initiative which not only was fundamentally unfair to appellant, see, *e.g., C. Miller Chevrolet v. Willoughby Hills* (1974), 38 Ohio St.2d 298, 67 O.O.2d 358, 313 N.E.2d 400, but which also arrogated authority not granted to it by R.C. 2711.10. *Goodyear Tire & Rubber Co. v. Local Union 200* (1975), 42 Ohio St.2d 516, 71 O.O.2d 509, 330 N.E.2d 703; *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn., supra; Cuyahoga Community College v. Dist. 925, Serv. Emp. Internatl. Union AFL–CIO, supra.*

■ A review of the trial court's order also leads to the inescapable conclusion that it then proceeded to review the merits of the award and, further, to disagree with several factual determinations made by the arbitrator. This was not only unwarranted, it was entirely improper. *Goodyear Tire & Rubber Co. v. Local Union 200, supra; Sparks v. Barnett* (1992), 78 Ohio App.3d 448, 605 N.E.2d 408; *Cleveland v. Fraternal Order of Police, Lodge No. 8* (1991), 76 Ohio App.3d 755, 603 N.E.2d 351; *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL–CIO, supra; Russo v. Chittick* (1988), 48 Ohio App.3d 101, 548 N.E.2d 314; *Huffman v. Valletto, supra; Stafford v. Greater Cleveland Regional Transit Auth.* (Dec. 23, 1993), Cuyahoga App. Nos. 63663 and 65530, unreported, 1993 WL 536089. See, also, *Steelworkers v. Am. Mfg. Co.* (1960), 363 U.S. 564, 568, 80 S.Ct. 1343, 1346–1347, 4 L.Ed.2d 1403, 1407.

A review of the record on appeal demonstrates that there was "a rational nexus between the collective bargaining agreement and the award" and the arbitrator was neither "corrupt [n]or committed gross procedural improprieties." *Cuyahoga Community College v. Dist. 925, Serv. Emp. Internatl. Union AFL–CIO, supra.* Having made this determination, judicial review of this case should have been at an end. *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn., supra.* In substituting its opinion and judgment for that of the arbitrator, the trial court clearly exceeded the authority granted to it pursuant to R.C. 2711.10. *Goodyear Tire & Rubber Co. v. Local Union 200, supra.*

Accordingly, for the foregoing reasons appellant's assignments of error are sustained.

The judgment and order of the trial court is reversed and vacated; the award of the arbitrator is reinstated.

*Judgment accordingly.*

HARPER, P.J., and KARPINSKI, J., concur.