TIM McCORMACK, J., DISSENTING:
 

 {¶ 47} I agree with the majority that the arbitrator had broad authority to fashion a remedy. That authority, though, is not limitless. I agree with CMHA that this arbitration award is unenforceable. This particular award violates public policy. It contravenes Ohio law. Accordingly, I respectfully dissent.
 

 {¶ 48} I agree with the majority that the public policy exception to our review of arbitration awards is narrow. I fully disagree with the majority's application of the exception in this case.
 

 {¶ 49} Here, the arbitrator acknowledged that a claim of dishonesty against a police officer was very stigmatizing and, therefore, CMHA must demonstrate by clear and convincing evidence that Wohlheter was dishonest. Applying that standard, the arbitrator found that Wohlheter committed dishonest conduct. The arbitrator's decision stated, in part:
 

 The evidence demonstrates that CMHA had sufficient evidence before it to determine that the Grievant gave misleading statements during the investigation of the incident. Even if the Grievant could have been mistaken about who opened the door to the apartment, the evidence obtained through the investigation revealed that the Grievant searched the apartment. The Grievant maintained that he did not search the apartment. Moreover, the Grievant said they were in the apartment 10-12 seconds. This is much different than the 10 minutes revealed during the investigation, and is clearly not the result of a mistake. Moreover the Grievant stated that all three officers dealt with Antonio Shanklin and the marijuana and then went to the apartment together. It was revealed that this was not true. The evidence reveals that Detective Ovalle stayed and dealt with Mr. Shanklin while the Grievant, Detective Weis and Moore went upstairs to the apartment. It is not likely that this was a mistake on the Grievant's part. The Grievant should recall if he dealt with Mr. Shanklin; this is not a minor detail, it's hard to believe that the Grievant would be mistaken about that. Therefore, CMHA provided clear and convincing evidence that the Grievant was not truthful during the investigation.
 

 The evidence establishes that the Authority provided clear and convincing evidence that the grievant engaged in misconduct and violated several of CMHA's
 rules and regulations. The Authority provided evidence that the Grievant participated in the unnecessary prolonged detainment of Moore, the illegal search of Terracia Goin's apartment and the Authority provided sufficient evidence that Grievant was dishonest during the investigation.
 

 {¶ 50} To determine whether there is a well-defined and dominant public policy prohibiting the reinstatement of a police officer who commits acts of dishonesty, we are to examine and seek guidance from "laws and legal precedents."
 
 S.W. Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627
 
 ,
 
 91 Ohio St.3d at 112
 
 ,
 
 742 N.E.2d 630
 
 .
 

 {¶ 51} R.C. 737.11, which outlines the general duties of police officers and firefighters, provides that "[t]he police force of a municipal corporation shall preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority of the municipal corporation, [and] all criminal laws of the states and the United States." In fulfilling these obligations, "honesty is vital to the effective performance of these duties and to ensuring public trust and confidence in the police force."
 
 Ironton v. Rist
 
 , 4th Dist. Lawrence No. 10CA10,
 
 2010-Ohio-5292
 
 ,
 
 2010 WL 4273235
 
 , ¶ 20, citing
 
 Brink v. Wadsworth
 
 , 9th Dist. Medina No. 1728,
 
 1988 WL 134279
 
 , 2 (Dec. 14, 1988) (the need to ensure the public trust and confidence in the police is vital) and
 
 Cincinnati v. Queen City Lodge No. 69, Fraternal Order of Police
 
 , 1st Dist. Hamilton No. C-040454,
 
 2005-Ohio-1560
 
 ,
 
 2005 WL 736667
 
 , ¶ 21-22 (it is the general public policy that law enforcement officers must not lie and honesty is expected of all law enforcement officers).
 

 {¶ 52} In
 
 Rist
 
 , a police officer falsified a traffic ticket and was terminated. The arbitrator reinstated the officer. The Fourth District found the arbitration award unenforceable, concluding that Ohio has "a dominant, well-defined public policy against the reinstatement of an officer who falsifies a police report."
 
 Id.
 
 at ¶ 20. The Fourth District relied on both R.C. 737.11 and Ohio case law in reaching this conclusion. The court first noted the obligations of a police force in R.C. 737.11 quoted above. The court went on to reference Ohio case law recognizing the vital role that honesty plays in police work and cited the supporting case law from other Ohio districts cited above. Further, the court quoted the following passage from a decision by the Supreme Court of Ohio:
 

 "[I]t is settled public policy * * * that police officers are held to a higher standard of conduct than the general public. * * * Law enforcement officials carry upon their shoulders the cloak of authority of the state. For them to command the respect of the public, it is necessary then for these officers even when off duty to comport themselves in a manner that brings credit, not disrespect, upon their department."
 

 (Citations omitted.)
 
 Rist
 
 at ¶ 20, quoting
 
 Jones v. Franklin Cty. Sheriff
 
 ,
 
 52 Ohio St.3d 40
 
 , 43,
 
 555 N.E.2d 940
 
 (1990).
 

 {¶ 53} Based on these laws and legal precedents, the Fourth District held that Ohio has a well-defined and dominant public policy against the reinstatement of an officer who falsified a police report. The Fourth District's decision was left standing by the Supreme Court of Ohio.
 

 {¶ 54}
 
 Rist
 
 was cited with approval by the Supreme Court of Ohio in a recent decision,
 
 State v. Mole
 
 ,
 
 149 Ohio St.3d 215
 
 ,
 
 2016-Ohio-5124
 
 ,
 
 74 N.E.3d 368
 
 . In
 
 Mole
 
 , the Supreme Court stated that "the interest in holding peace officers to a higher standard is embedded in Ohio law" and "the need to maintain the efficiency and honesty of law enforcement serving the community is widely recognized."
 

 Id.
 
 at ¶ 48. As described by the Supreme Court of Ohio, the Fourth District in
 
 Rist
 
 struck down the reinstatement of an officer who falsified a traffic ticket as "violating well-defined public policy favoring honest police force that commands the public trust."
 
 Id.
 

 {¶ 55} Respectfully, the majority's narrative offered in an effort to distinguish this case from
 
 Rist,
 
 4th Dist. Lawrence No. 10CA10,
 
 2010-Ohio-5292
 

 ,
 
 and
 
 Jones,
 

 52 Ohio St.3d 40
 
 , 43,
 
 555 N.E.2d 940
 
 , is not persuasive. The majority asserts an inappropriately narrow interpretation of the public policy prohibition in
 
 Rist
 
 , finding that prohibiting the reinstatement of a police officer who falsifies a traffic ticket does not prohibit reinstatement related to any or all acts of dishonesty. The majority then concludes that because Wohlheter was not terminated for falsifying a police report, the public policy in
 
 Rist
 
 does not preclude his reinstatement.
 

 {¶ 56} We note first that, although the facts in
 
 Rist
 
 involved the falsification of a traffic ticket, the court found that Ohio has a well-defined and dominant public policy expressly prohibiting the reinstatement of an officer who falsifies a report. While the prohibition is certainly more than a "general consideration of supposed public interest," it is clearly not limited to falsifying traffic tickets.
 
 W.R. Grace & Co. v. Local Union 759, Internatl. Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am.
 
 ,
 
 461 U.S. 757
 
 , 766,
 
 103 S.Ct. 2177
 
 ,
 
 76 L.Ed.2d 298
 
 (1983).
 

 {¶ 57} Further, while the court's holding in
 
 Rist
 
 was undoubtedly bolstered by the fact that falsification is a criminal act, its public policy holding was ultimately rooted in the notion that "honesty is vital to the effective performance of [police] duties and to ensuring public trust and confidence in the police force."
 
 Rist
 
 at ¶ 20. In light of this reasoning, I find the reinstatement of an officer who first violated department policy and Ohio laws of search and seizure and subsequently made repeated false statements and provided a knowingly untruthful account of those events during an official investigation to be equally violative of the public policy against reinstatement of dishonest officers.
 

 {¶ 58} This position is further supported by the unique circumstances of the facts underlying the investigation in this case as articulated by CMHA Police Chief Andres Gonzalez. Gonzalez testified at length before the arbitrator and explained that, as a CMHA officer, Wohlheter was tasked with serving an economically disadvantaged community that has historically had a high level of distrust of the police. He went on to explain that CMHA police officers are unique in that they encounter the same residents and their families frequently and, therefore, earning the community's trust is of utmost importance in the officers' ability to carry out their duties. In light of this context, an officer making false statements during an investigation into his own commission of an unnecessary prolonged detainment and illegal search is just as detrimental, if not more so, to a police force's ability to effectively carry out its duties under R.C. 737.11 as falsifying a traffic ticket.
 

 {¶ 59} Like Wohlheter, Det. Ovalle also filed a grievance regarding his termination and the matter proceeded to arbitration as well. Contrasting the roles of the two CMHA officers, the arbitrator reinstated Det. Ovalle, finding that Det. Ovalle did not participate in the illegal search of the apartment and that Tamblyn Stanley's account of excessive use of force was not credible. More importantly, the arbitrator found that Det. Ovalle did
 
 not
 
 engage in dishonest conduct during the investigation of the incident. Consequently, the arbitrator reinstated Det. Ovalle and imposed a 30-day suspension instead. This court affirmed the trial court's decision that affirmed
 the arbitration award.
 
 Cuyahoga Metro. Hous. Auth. v. FOP, Labor Council, Inc.
 
 , 8th Dist. Cuyahoga No. 104319,
 
 2017-Ohio-190
 
 ,
 
 2017 WL 237821
 
 . In affirming the trial court's judgment denying CMHA's motion to vacate the arbitration award, this court reasoned as follows:
 

 CMHA raised issues of dishonesty throughout the arbitration proceedings and the arbitrator addressed these allegations specifically.
 
 The arbitrator found that Detective Ovalle did not engage in dishonest conduct
 
 . The portion of the arbitration award detailing the arbitrator's findings that Detective Ovalle did not engage in conduct that would constitute dishonesty is lengthy and thorough. CMHA attempted to show that Detective Ovalle lied during interviews he gave regarding the Stanley and Moore incidents.
 
 The arbitrator found that Detective Ovalle was not dishonest
 
 , and that his version of events was more credible than Stanley's. The arbitrator found that Stanley's allegations against Detective Ovalle changed over time. She initially reported that Detective Ovalle swept her legs out from under her, causing her to fall. She later said Detective Ovalle pushed her down to the ground. The arbitrator noted that Detective Ovalle's description of his interaction with Stanley was consistent. The arbitrator found that Detective Ovalle was more credible. Credibility determinations are primarily for the factfinder to make. This court cannot review the merits of the factual determinations made by the arbitrator.
 
 Cleveland Police Patrolmen's Assn. v. Cleveland
 
 ,
 
 107 Ohio App.3d 248
 
 , 257,
 
 668 N.E.2d 548
 
 (8th Dist. 1995). Further, Moore's version of events fit more closely with Detective Ovalle's statements and testimony than Stanley's.
 

 (Emphasis added.)
 
 Cuyahoga Metro. Hous. Auth.
 
 at ¶ 14.
 

 {¶ 60} Although the court was constrained by its inability to review the factual determinations made by the arbitrator, it nevertheless quoted the public policy enunciated by the Supreme Court in
 
 Jones
 
 and noted that in identifying "a strong, well-recognized public policy * * * that precluded the reinstatement of officers who falsified reports,"
 
 Rist
 
 was "representative of a line of cases demonstrating a strong public policy against the retention of individuals as police officers who engage in acts of dishonesty in their official capacity."
 
 Id.
 
 at ¶ 13.
 

 {¶ 61} The majority in this case concludes that because the court in
 
 Cuyahoga Metro. Hous. Auth.
 
 did not address or analyze any alleged dishonesty by Det. Ovalle, it did not adopt or apply the relevant public policy. This conclusion is problematic. The court did not affirm the arbitrator's award because it did not find a well-defined and dominant public policy prohibiting the reinstatement of officers who commit acts of dishonesty in their official capacity. On the contrary, the court affirmed the arbitrator's award, at least in part, because Det. Ovalle had not committed acts of dishonesty that would have made the arbitrator's award violate public policy.
 

 {¶ 62} In contrast to the arbitrator's finding regarding Det. Ovalle, the arbitrator in the instant case found Wohlheter to have engaged in repeated acts of dishonesty yet reinstated him. This writer acknowledges that the narrow public policy exception does not provide a broad judicial power to set aside arbitration awards as against public policy. The facts of this case are certainly sufficiently compelling to vacate the arbitrator's award reinstating Wohlheter. The continued employment of any such officer only serves to erode fragile public trust and confidence in the law
 enforcement officers, who are entrusted to the unique front line position of public trust. Ohio's courts have stressed the importance of maintaining the public's confidence by ensuring the integrity of law enforcement officers. Examining the laws and legal precedents, it is found that Ohio has a well-defined and dominant public policy favoring an honest police force made up of officers who command the public trust, and laws and court precedents against the reinstatement of a police officer who has committed acts of dishonesty in his official capacity.
 

 {¶ 63} I agree with the majority's determination that the arbitrator here had the authority to act. No arbitrator possesses unlimited authority to exceed clearly established public policy. This award is contrary to public policy. It should not be enforced. For that reason, I would reverse the trial court's judgment denying CMHA's motion to vacate the arbitration award reinstating Wohlheter.